JOHNSON, administratrix, *v.* THE BRADSTREET COMPANY.

Under section 2967 of the code, as amended by the act of 1889 (Acts of 1889, p. 73), an action for libel, pending at the time the act passed, does not abate upon the death of the plaintiff.

March 23, 1891.

Actions. Libel. Abatement. Before Judge VAN EPPS. City court of Atlanta. September term, 1890.

Reported in the decision.

ARNOLD & ARNOLD, T. P. WESTMORELAND, MAYSON & HILL and J. T. GLENN, for plaintiff.

CANDLER & THOMSON and N. J. & T. A. HAMMOND, for defendant.

LUMPKIN, Justice.

The question presented for our determination in this case is, whether or not an action for libel, brought before the passage of the act recited in the head-note, and pending when the act was passed, is abated by the death of the plaintiff. It appears that Johnson died September 1st, 1890, which was, of course, after the passage of the act. It does not appear from the particular record now before us on the present hearing of this case whether or not the suit was brought before the passage of the act referred to, but we learn from statements of counsel that such is the fact. Besides, this same case came to this court in the lifetime of Johnson, the intestate of the plaintiff in error. See *Johnson* v. *Bradstreet Company*, 81 *Ga.* 425. The record there shows the case was brought before the passage of the act. It will thus be seen that the case was pending when the act passed,

and that Johnson died thereafter. We have considered and determined the case with reference to these facts. The act undoubtedly applies to cases brought after its passage, and no reason appears, or was suggested to us in the argument, why it should not apply to pending suits. The language of the act is sufficiently comprehensive to include pending actions, and we hold that it does. No position to the contrary was either taken or insisted upon by counsel for the defendant in error. The only contention presented by the discussion of the case was, whether or not the section as amended applied to actions for libel. It is unquestionably true that before the section was amended, such an action would not have survived the death of the plaintiff. The amending act provides that no action "for homicide, injury to person or injury to property shall abate by death." If the words "injury to person" are to be restricted to mere bodily or physical injuries, an action for libel would be abated by the death of the plaintiff; but if these words are held to extend to *all* injuries to person, then such action would not be so abated. In our opinion, these words are used in a technical legal sense, and should be construed accordingly.

Some light is thrown upon the question at issue by reference to the position which the amended section occupies in the code. Title VIII of part II of the code treats of " torts, or injuries to persons or property." Chapter 2d of that article deals with " injuries to the person." This chapter is divided into three articles. The first treats of " physical injuries," the second of " injuries to reputation," and the third of " other injuries to the person." According to this classification, it will be seen that injuries to reputation are included in the chapter dealing generally with injuries to the person. The article relating to physical injuries treats only of injuries to the body; that relating to the repu-

tation includes and defines libel and slander; and the remaining article of that chapter deals with *still other personal injuries*, such as false imprisonment, malicious arrest, and injuries to health. All of the foregoing injuries, as has been shown, are classed under the general subdivision covering injuries to the person. It is more than probable that the legislature, in making this new law a part of the code, intended that it should harmonize with its surroundings; and in amending this section, it was doubtless their deliberate purpose that the words used in the amending act should be construed and understood with reference to the existing arrangement and classification of the law of torts, in which this new law found its place. If, however, the meaning of the words "injury to person" cannot be determined by the position of the amended section in the code, it may be arrived at by reference to the common law. At common law, absolute personal rights were divided into personal security, personal liberty, and private property. The right of personal security was subdivided into protection to life, limb, body, health, and reputation. 3 Blackst. Com. 119. If the right to personal security includes reputation, then reputation is a part of the person, and an injury to the reputation is an injury to the person. Under the head of "security in person," Cooley includes the right to life, immunity from attacks and injuries, and to reputation. Cooley on Torts (2d ed.), 23, 24. See, also, Pollock on the Law of Torts, *7. Bouvier classes among absolute injuries to the person, batteries, injuries to health, slander, libel, and malicious prosecutions. 1 Bouv. L. Dic. (6th ed.) 636. "Person" is a broad term, and legally includes, not only the physical body and members, but also every bodily sense and personal attribute, among which is the reputation a man has acquired. Reputation is a sort of right to enjoy the good opinion of others, and is capa-

v 87-6

ble of growth and real existence, as an arm or a leg. If
it is not to be classed as a personal right, where does it
belong? No provision has been made for any middle
class of injuries between those to person and those to
property, and the great body of wrongs arrange them-
selves under the one head or the other. Whether
viewed from the artificial arrangement of law writers,
or the standpoint of common sense, an injury to repu-
tation is an injury to person. And oftentimes an in-
jury of this sort causes far more pain and unhappiness,
to say nothing of actual loss in money or property,
than any physical injury could possibly occasion.

As already suggested, it is of great importance to
arrive, if possible, at the intention of the legislature as
to the meaning to be given to the words "injury to
person." We have endeavored to show that the legis-
lative intent may, to some extent, be arrived at by ref-
erence to the place in the code which the amended sec-
tion occupies; and we have also endeavored to show
that the common law meaning of the words "injury to
person" includes libel, slander, and the like. Having
reached this point in the discussion, we may also invoke
another rule for the construction of statutes, viz. that
where words have a definite and well-settled meaning
at common law, it is to be presumed, unless some good
reason to the contrary appears, that this same meaning
attaches to them when used in a statute. In Suther-
land on Stat. Construction, §253, we find the follow-
ing: "Where a statute uses a word, which is well-
known and has a definite sense at common law, or in
the written law, without defining it, it will be restricted
to that sense, unless it appears that it was not so in-
tended." Again, in §291, that author says: "In all
doubtful matters, and when the statute is in general
terms, it is subject to the principles of the common
law. . . When words of definite signification therein

are used in such provisions, and there is no intention manifest that they are to be taken in a different sense, they are to be deemed employed in their known and defined common law meaning." The same rule is laid down by Endlich, who says: "Where a term used in a statute has acquired at common law a settled meaning, that is ordinarily the technical meaning which is to be given to it in construing the statute." Endlich on the Interp. of Stat. §3. And to the same effect see, also, §127. The legislature having considered this subject of sufficient importance to pass this amending act, we must presume they intended to give these words their legal meaning and effect, as there is no good reason to conclude that they intended to use them in such a restricted sense as would confine them alone to bodily or physical injuries.

After considerable labor and research, we have been unable to find many authorities outside of this State bearing directly upon the question under discussion. A Texas case seems, at first glance, to hold contrary to the doctrine we have herein asserted. In the case of Engelking v. Von Wamel, 26 Tex. 469, it was held that an act which gave to justices' courts cognizance "over all suits for torts, trespass, and other injuries to person or property," where the amount sought to be recovered did not exceed one hundred dollars, did not include actions for slander. Wheeler, C. J., remarks that while "libel and slander, according to Blackstone and other elementary writers, are infractions of the right of personal security, and are treated by them under the general denomination of injuries affecting the rights of persons," and are, "as understood by the legal profession, injuries to the person," yet it was not to be supposed the legislature intended by the language used to give to justices of the peace jurisdiction over such actions, because it would be the exercise of a novel, difficult,

and very inconvenient jurisdiction for them, such as, it was not to be conceived, the legislature had in contemplation in framing the statute. This decision, therefore, seems to be based mainly upon the idea that it was improbable the legislature of Texas intended to confer upon justices' courts jurisdiction of this kind; but it will be observed, the court recognized the rule that libel and slander may, in a technical sense, be regarded as injuries to the person. The case of Ward *v.* Blackwood, 41 Ark. 295, holds contrary to the conclusion we have reached in this case. Construing a statute containing the words "for wrongs done to the person or property of another," they were held to relate only to bodily injuries or damages of a physical character, and not to extend to torts affecting the feelings or reputation. The case last mentioned cites Smith *v.* Sherman, 4 Cush. 408, Nettleton *v.* Dinehart, 5 Cush. 543, and Norton *v.* Sewall, 106 Mass. 145 ; and an examination of them shows that they are in point. Notwithstanding these decisions, and others on the same line which might be found, we adhere to our own conclusion, and are fortified, we think, in so doing by what has already been said concerning the place which the amended section occupies in our code. Aside from this, the following authorities seem to sustain our judgment in the case before us: In the case of Cregin *v.* Brooklyn Crosstown R. R. Co., 75 N. Y. 192, construing the meaning of the words "actions on the case for injuries to the person of the plaintiff," found in a New York statute, the court held that these words included actions for slander, libel, assault and battery, and false imprisonment; and that cases of this kind were to be treated as actions for injuries done to the person of the plaintiff. Under section 2157 of the code of Alabama, actions for injuries to the person or reputation are abated by the death of a party. Construing this section, in the case

of Garrison v. Burden, 40 Ala. 513, it was held that an action to recover damages for the seduction of the plaintiff's wife was an action for injuries to the person, and, therefore, under the section cited, abated by the death of the defendant. Judge, J., says: "Is adultery, or criminal conversation with the wife, in legal contemplation, an injury to the person of the husband? Blackstone and Chitty both declare that it is, . . and upon this point we are not aware there is any conflict of authority." This case, in effect, rules that injuries to the person are not confined to physical injuries. In the case of Delamater v. Russell, 4 How. Pr. 234, it was held that an action for criminal conversation with the plaintiff's wife was an action for injury to the person of the plaintiff. Parker, J., says: "Rights of persons are divided into absolute and relative. Criminal conversation is classed under actions for injuries to the latter. This classification is related by all our elementary writers."

While the question here decided is certainly not free from doubt, but is one upon which plausible arguments can be made on both sides, we think, in view of the foregoing reasons and the advancing policy of our law, that good causes of action should not be abated by the death of a party, the right to proceed with this case survived to the deceased plaintiff's representative, and we therefore feel constrained to reverse the judgment of the court below.			*Judgment reversed.*