JOHN H. McDONALD *vs.* D. RUSSELL BROWN.

PROVIDENCE—FEBRUARY 3, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Bankruptcy. Tort Debtors.*

The purpose and spirit of the bankruptcy act is to relieve honest debtors, when insolvent, from their money obligations, and not to free tortious debtors from liability for their wrongs.

A judgment obtained in an action of trespass on the case for libel is not dischargeable in bankruptcy under chapter 3, section 17, of the United States bankruptcy act.

(2) *Bankruptcy. Merger of Action in Judgment.*

A cause of action is not so far merged in the judgment as to prevent its being shown, where the defendant claims to be discharged therefrom, in bankruptcy.

SCIRE FACIAS against bail. Heard on demurrer to plea in bar, and demurrer sustained.

TILLINGHAST, J. This is *scire facias* against bail. The writ sets out that by the consideration of the Common Pleas Division of this court, on the 25th day of December, 1900, the plaintiff recovered judgment against Torrey E. Wardner for the sum of $250 and costs ; and that, although execution has been issued on said judgment, it still remains unsatisfied and the officer to whom the execution was directed has returned thereon that he could not find either the body or the estate of the said Torrey E. Wardner whereon to levy the same. Wherefore he brings this action against the defendant, who became bail for the said Torrey E. Wardner on the original writ in the action aforesaid.

To this action the defendant files a plea in which he sets out that the plaintiff ought not to have his execution against him, because he says that the said Torrey E. Wardner, after the recovery of the judgment aforesaid and before the issuing of the writ in this case, to wit, on the 19th day of January, 1901, being bankrupt and insolvent, did file his petition for relief as a bankrupt in the District Court of the United States for the District of Massachusetts, and was, on said 19th day of January, adjudged to be bankrupt and insolvent, and that he afterwards entered into a composition with his creditors which was duly accepted by a majority of those whose claims have been allowed, which composition, on the 11th day of June, 1901, was duly confirmed by said United States District Court. The plea also sets out that on said 11th day of June said Torrey E. Wardner filed his petition for discharge from all provable debts existing at the time when his petition for relief was filed, of which said provable debts the judgment mentioned in said writ was one, and that a decree was thereupon duly entered in said United States District Court discharging the said Torrey E. Wardner from all of his debts outstanding at the time of the filing of his petition for relief. Wherefore the defendant in this case prays judgment if the plaintiff ought to have his execution against him, etc.

(1) To this plea the plaintiff demurs, on the grounds (1) that the discharge in bankruptcy of the said Torrey E. Wardner does not release the defendant; and (2) that the debt upon which the present action is based is not one dischargeable in bankruptcy, because said debt is founded upon a judgment obtained in an action of trespass on the case for libel, and was obtained before the said Wardner filed his petition in bankruptcy.

Chapter 3, section 17 of the United States bankruptcy law of 1898 provides that "A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as (1) are due as a tax levied by the United States, the State, county, district, or municipality in which he resides; (2) are judgments in actions for frauds, or obtaining property by false

pretenses or false representations, or for willful and malicious injuries to the person or property of another; (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer, or in any fiduciary capacity."

The only question raised by the pleadings is whether the discharge in bankruptcy of said Torrey E. Wardner released him from the judgment debt above mentioned. The answer to this question, of course, depends entirely upon the construction which shall be put upon the language used in clause 2 of said section 17, viz.: "or for willful and malicious injuries to the person or property of another."

If a judgment in an action for libel is a judgment based on willful and malicious injury to the person of another, then it is within the exception and is not released by the discharge of the bankrupt.

A libel is both a public wrong and a private wrong. The remedy for the public wrong is by indictment or other criminal proceedings, while the remedy for the private wrong is by a civil action at common law, which is classed and known as a tort action.

One of the essential elements of every libel is malice. And no declaration which should fail to charge that the publication complained of was malicious would state a cause of action. Whether there was actual malice—that is, an evil intent or motive arising from spite or ill-will—in connection with the publication, or only the malice which exists by implication of law from the publication of the libelous matter, is immaterial in so far as the right of action is concerned. In short, if the act was done without legal excuse, it was in law a malicious act.

That the act of publishing a libel is a willful act, in the sense, at least, that it is an act of volition on the part of the publisher, needs no argument. Every act is *prima facie* an act of volition, and must be regarded as such until the con-

trary is shown. And such an act is more than a mere voluntary one, for it is coupled with a means of knowledge of the character of the act about to be performed and an intention to do it. Moreover, as said by the court in *Anderson* v. *How*, 116 N. Y. p. 342, "Willfulness is implied in maliciousness."

A libel, then, being a willful and malicious act, the only remaining question is whether it can be properly said to be an injury against the *person* of another so as to come within the meaning of the language in said section 17 of the bankrupt act. If the language "willful and malicious injuries to the person of another" means only physical injuries to his body, the case before us does not fall within that class. But if, on the other hand, said language is to be taken in its broad and general sense and as commonly understood, it does include an injury caused by libel.

Wrongs are divisible into two classes: private wrongs and public wrongs. The former are an infringement of the private or civil rights belonging to individuals, considered as individuals, and are therefore generally termed civil injuries; while the latter are a breach and violation of public rights and duties, and are termed crimes and misdemeanors.

In Cooley on Torts (98) the learned author says: "A wrong is an invasion of right to the damage of the party who suffers it. It consists in the injury done, and not commonly in the purpose or mental or physical capacity of the person or agent doing it. It may or may not have been done with bad motive; the question of motive is usually a question of aggravation only. Therefore, the law in giving redress has in view the case of a party injured and the extent of his injury and makes what he suffers the measure of compensation."

"In its most usual sense," according to Mr. Blackstone (3 Bla. Com. 158), "wrong signifies an injury committed to the person or property of another or to his relative rights unconnected with contract; and these wrongs are committed with or without force."

In view of these definitions, we think it is clear that a

libel is a wrong and injury committed against the person of another. As a part of the right of personal security the preservation of every person's good name from the vile arts of detraction is justly included, and for a violation of this right ample remedies are provided.

The law, which is supposed to be good common sense crystallized, looks upon and treats a person's character as an inseparable part of the person himself. If that is injured, he is necessarily injured; if that is wronged, he is wronged. Indeed, it is frequently said, and with much truth, that "Character makes the man." And in this connection we may say that it is difficult to conceive of a greater injury which could be done to a person than to wrongfully and maliciously tarnish or blacken and destroy his good character in the community where he lives. Wounded feelings, mental anguish, loss of social position and standing, personal mortification and dishonor, are clearly injuries that pertain to the person. In so far as we are aware, injuries to the character are always classed in the law with injuries to the person.

Under the Code of Civil Procedure of the State of New York, libel and slander are included in injuries to the person. See *Colwell* v. *Tinker*, 72 N. Y. Supp. 506.

The policy of the bankrupt law is not to relieve an insolvent debtor from liabilities arising out of his fraud or other wrongdoing, but to relieve him from his debts and obligations which were honestly contracted and incurred, but which, because of misfortune of some sort, he has become unable to meet. To hold otherwise, as it seems to us, would be to make the law an instrument of wrong and oppression.

Where, therefore, as in the case before us, a judgment has been obtained on a right growing out of willful and malicious injury to the person of the plaintiff, the discharge of the debtor in bankruptcy does not, in our opinion, have the effect to relieve him from such judgment.

While no case has been cited by counsel, nor have we been able to find any, in which the particular question here raised was involved, we have found several which are closely anal-

ogous and which strongly confirm us in the view which we have taken of the statute aforesaid.    We will refer to a few of them.

*Disler* v. *McCauley*, 71 N. Y. Supp. 949, decided in July, 1901, was a case for breach of promise of marriage in which seduction and the birth of a child were proved.    The defendant, after judgment against him, went into bankruptcy and obtained his discharge.    He then filed a motion for the cancelling and discharge of the judgment.

Dickey, J., in denying the motion, said : " While in form and in name this action was one for breach of promise to marry, the complainant properly included an allegation of seduction under promise of marriage.    Proof was given of the seduction and birth of a child, and damages were given in the sum of $3,000.    It may fairly be assumed that at least a part of these damages included in the judgment herein grew out of and were given because of the injury to the person covered by the seduction part of the complaint.    This being so, can it be said that the judgment and no part of it is one for willful injury to the person ?  .  .  .   To my mind, Congress never intended to discharge bankrupts from liability for damages such as are included in this judgment. The purpose of the bankrupt act was to relieve failing honest debtors from their money obligations and not to free tortious debtors from liability for their wrongs.  .  .  .   The spirit of the bankruptcy law is to govern.    This bankruptcy proceeding was evidently taken to discharge this very judgment, because the bankrupt owed practically nothing besides. There would be little use in bringing actions of this character if the judgment obtained might be speedily discharged by going through the form of bankruptcy proceedings.    This should not be encouraged."

In the case of *In re Freche*, 109 Fed. Rep. 620, decided in June, 1901, it was held that a judgment recovered in a court of New Jersey for seduction of the plaintiff's minor daughter, which must be based on loss of services but also includes damages for personal injuries to the plaintiff through being subjected to mental anguish, disgrace, etc., is one for a " willful

and malicious injury to the person or property of another" within the meaning of the bankruptcy act of 1898, and is not released by a discharge of the defendant in bankruptcy. Kirkpatrick, J., in delivering the opinion of the court, said : "Until the daughter attains the age of twenty-one years, this right to her services is a property right which the father is entitled to enjoy without molestation ; and any unlawful act which hinders him from availing himself of the benefits of this right or making such disposition of it as he sees fit, is an interference for which he is entitled to recover damages, as for an injury to his property. But, as was said by Jackson, J., in *Barbour* v. *Stephenson*, (C. C.) 32 Fed. Rep. 66, ' the plaintiff goes through the form of showing that he was entitled to the daughter's services in order to reach the higher plane of wrong and injury for which he was entitled to compensation.' Therefore, upon the foundation of loss of services, there has been built up a right of the parent to recover in such actions damages for the personal injuries inflicted upon him by the act of seduction, and to receive compensation for being thereby subjected to mental anguish, anxiety, permanent sorrow, dishonor and disgrace. The jury is entitled to consider all these injuries in assessing the plaintiff's damages. In this respect the injury is to the person of the plaintiff, and the damages recovered are analogous to those in an action of slander or libel. . . . The act was unlawful, wrongful, and tortious, and, being willfully done, it was in law malicious. . . . ' Malice ' in law simply means a depraved inclination on the part of a person to disregard the rights of others, which intent is manifested by his injurious acts. . . . I am of the opinion that the discharge of the bankrupt does not release him from the judgment obtained by Charles T. Combs, for the nonpayment of which Freche is in custody, because the same is a judgment for willful and malicious injuries to the person or property of another and as such excepted by sub-section 2 of section 17 of the Bankruptcy Act." To the same effect is *In re Meples*, 105 Ind. 919. See also *In re Hirschman*, 4 A. B. R. 715.

(2)    That the cause of action in the case, is not so far merged in the judgment, as to prevent its being shown, where the defendant claims that he is discharged therefrom in bankruptcy, see *Young* v. *Grau*, 14 R. I. 340.

Most of the cases relied on by defendant's counsel in support of the demurrer are cases under the bankruptcy law of 1867, which was materially different from the present law in regard to the matter here involved, and hence they are not controlling.

Demurrer sustained, and case remanded for further proceedings.

*John J. Dockry*, for plaintiff.

*Dexter B. Potter*, for defendant.