Robinson, J.
 

 The sole question in this case is whether a slander is a “personal injury” by a “wrongful act,” within the intent and meaning of the proviso to Section 11819, General Code, “an attachment shall not be granted on the ground that the defendant is a foreign corporation or not a resident of this state, for any claim other than a debt or demand, arising upon contract, judgment or decree, or for causing damage to property or death or personal injury by negligent or wrongful act.” 109 Ohio Laws, 59. The trial court in this case held that it is not. The Court of Appeals on error held that it is.
 

 
 *102
 
 The solution of the question depends upon the sense and meaning in which the Legislature used the word “personal.” The word is one in common use, and, in the absence of anything in the context of the act to indicate its use by the Legislature other than in its ordinary and generally accepted meaning, will be construed as having been so used by the Legislature. The word is defined in Webster’s New International Dictionary:
 

 “3. Pertaining to the person, or body. 4. Relating to an individual, his character, conduct, motives, or private affairs, esp. in an invidious and offensive manner.”
 

 The Century Dictionary and Cyclopedia:
 

 “3. Proper or directly applicable to a specific person or individual, or to his character, conduct,” etc.
 

 The American Encyclopedia Dictionary:
 

 “3. Of or to the person or bodily form; corporeal. 4. Applied or relating to the person, character, conduct, manner, or habits of an individual, generally used in a disparaging sense.”
 

 We cannot escape the conclusion that the common, usual, and generally accepted meaning of the word “personal” is that it relates to either the physical body of a person or the character, conduct, manner, and habits of a person, or both; that such has been its meaning from time immemorial. Text-writers and jurists have so used it. Sir William Blackstone, in* his Commentaries on the Laws of England, under the chapter “Of the Rights of Persons,” classifies reputation as one of the enumerated rights of personal security. Chancellor Kent, in his Commentaries on American Law, places slander
 
 *103
 
 and libel under the classification of personal security, and says:
 

 “As a part of the right of personal security, the preservation of every person’s good name from the vile arts of detraction is justly included.”
 

 Sir Frederick Pollock, in his treatise on the Law of Torts, groups slander and libel among personal wrongs, “wrongs affecting personal reputation; slander and libel.” Judge Cooley, in his treatise on Torts, under the subject of personal rights, says:
 

 “In all enlightened countries the same class would also include the right to the benefit of such reputation as one’s conduct has entitled him to,” as one of the personal rights.
 

 In the state of New York the Legislature, by statr utory definition, has declared:
 

 “A personal injury included libel, slander, # *
 

 It is urged, however, that because this amendment to that portion of Section 11819, extending the right to secure jurisdiction over the property of a nonresident defendant by attachment, in actions for damage to property or for death or personal injury by negligent or wrongful act, was enacted since the advent and common use of the motor vehicle, with its attendant dangers and the facility it affords to quickly escape the jurisdiction in which the injury occurs, it was enacted to provide a process to persons physically injured or to the legal representatives of persons killed, whereby they can require such nonresident defendant to answer in any forum where property of such nonresident can be found; and we are therefore asked to construe this provision of Section 11819 so as to express that intention of the Legislature. In other words, we are asked
 
 *104
 
 to ascertain the intention of the Legislature from facts extraneous to the act and extraneous to related legislation, and then to interpret that which the Legislature did enact as meaning that which we find, from such extraneous information and investigation, it intended to enact.
 

 This court, in the case of
 
 Slingluff
 
 v.
 
 Weaver,
 
 66 Ohio St., 621, 64 N. E., 574, declared:
 

 “The intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the lawmaking body, there is no occasion to resort to other means of interpretation. The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction.”
 

 For obvious reasons, courts ought not to add uncertainty to the meaning and effect of the language used in an enactment by restricting the accepted and generally understood meaning of common words. Such a restriction by construction is justifiable only when the restricted use is made to appear by the act itself or by related legislation. It would have been perfectly feasible for the Legislature to have used, in place of the word “personal,” one of several words, such as “bodily,” “corporeal,” or “physical,” in which case the right to obtain jurisdiction over the property of a defendant in cases of libel, slander, and the like would not have been created by that section.
 

 It is said in 2 Sutherland’s Statutory Construction, Section 389:
 

 
 *105
 
 “Primarily — that is, in the absence of anything in the context to the contrary — common or popular words are to be understood in a popular sense: Common law words according to their sense in the common law; and technical words, pertaining to any science, art or trade, in a technical sense. It is a familiar rule of construction, alike dictated by authority and common sense, that common words are to be extended to
 
 all the objects which, in their usual acceptance, they describe or denote.”
 

 The exact question here was decided by the Supreme Court of North Carolina in the case of
 
 Tisdale
 
 v.
 
 Eubanks,
 
 180 N. C., 153, 104 S. E., 339, 11 A. L. R., 374, the court there holding:
 

 “The security of a person’s good name and reputation is within his personal rights as a citizen, and slander thereof is an injury to his person, and will sustain a proceeding for an attachment within the intent and meaning of Bev. 728 [758] (4), as an ‘injury to the person by * * * wrongful act’.”
 

 In the case of
 
 Johnson, Admx.,
 
 v.
 
 Bradstreet Co.,
 
 87 Ga., 79, 13 S. E., 250, the court had under consideration an act providing that no action ‘.‘for homicide, injury to person or injury to property shall abate by death,” and held:
 

 “An action for libel, pending at the time the act passed, does not abate upon the death of the plaintiff.”
 

 In the case of
 
 Times Democrat Publishing Co.
 
 v.
 
 Mozee
 
 (C. C. A.), 136 F., 761, it was held:
 

 “Injuries to character and mental suffering resulting from a libelous publication are ‘personal injuries,’ within the meaning of Act La. No. 68, p. 95, of 1902, amendatory of Bev. Civ. Code La. 1870, Article 2402, which provides,
 
 inter alia,
 
 that ‘dam
 
 *106
 
 ages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone,’ and under such provision a wife may maintain an action to recover damages for a libel affecting herself.”
 

 In the
 
 per curiam
 
 opinion the court declares:
 

 “At common law, libel and slander were classified as injuries to the person, or personal injuries. * * * In the construction of the statutes of the United States and of the several states, where the terms ‘injury to the person’ and ‘personal injuries’ have been construed, the great majority of the decisions of the higher courts, and nearly all of the intelligent reasons given, have been to the effect that libel is a personal injury.”
 

 In the case of
 
 Thompson
 
 v.
 
 Judy
 
 (C. C. A.), 169 F., 553, the court had under consideration the status of a judgment obtained by one McClintock against one Thompson, for a false and malicious libel published in a newspaper by Thompson. Thompson had filed a voluntary petition in bankruptcy in the United States District Court and listed the claim of McClintock as one of his liabilities, under favor of Section 17a, 30 Stats, at L., 550 (Title 11, Section 35, U. S. Code; U. S. Comp. Stats. 1901, p. 3428), which provided that a discharge should release a bankrupt from all his provable debts except such as “are judgments in actions * * * for willful and malicious injuries to the person or property of another,” and an amendment to that section which had substituted the word “liabilities” for “judgments in actions.” Thompson received his discharge in bankruptcy and a writ of
 
 capias ad satisfaciendum
 
 was issued on the judgment, the arrest
 
 *107
 
 of Thompson was had and a petition filed for writ of
 
 habeas corpus
 
 on the ground that the indebtedness upon which the capias was issued had been discharged in bankruptcy. The judgment of the district court dismissing the suit and remanding the petitioner to state custody was affirmed, and in deciding the case the court said:
 

 “The question is therefore one of construction. It is true that in modern parlance the words ‘personal injury’ are often used to designate a physical injury to the party. But usually, when there is any attempt to put the matter into legal phraseology, these and equivalent words are understood to import the meaning in which they have long been used by recognized authorities, whether in legal textbooks and commentaries or precise definition by courts, in classifying the rights of individuals. * # *
 

 ' “The reasonable presumption is that Congress, being engaged in framing a statute so much requiring precision of terms, expected its language to be interpreted by long-settled usage in legal homenclature.”
 

 In the case of
 
 McDonald
 
 v.
 
 Brown,
 
 23 R. I., 546, 51 A., 213, 58 L. R. A., 768, 91 Am. St. Rep., 659, the court had under consideration Section 17 of Chapter 3 of the United States Bankruptcy Act, which provides that a discharge in bankruptcy shall release the bankrupt from all his provable debts, except among other things, “judgments in actions * * * for willful and malicious injuries to the person or property of another,” and held:
 

 “A judgment obtained in an action of trespass on the case for libel is not dischargeable in bankruptcy under Chapter 3, Section 17, of the United States Bankruptcy Act.”
 

 
 *108
 
 To the same effect is
 
 Sanderson
 
 v. Hunt, 116 Ky., 435, 76 S. W., 179, 3 Ann. Cas., 168.
 

 Contra to onr conclusion is the case of
 
 Addison
 
 v.
 
 Sujette,
 
 50 S. C., 192, 27 S. E., 631, where the court held:
 

 “Attachment cannot be issued against property of an absent defendant in an action for slander.”
 

 The wording of the statute under consideration in that case is not sufficiently different from the wording of our statute to distinguish the situation there from' the situation here. The court, however, in the decision of that case, lays stress upon a former decision made by that court upon a statute which gave the remedy for' torts, trespasses and all injuries done to property, real or personal, and held that the amendment of the statute to include injury done to either person or property did not extend its provisions so as to necessarily include an action for slander, and held, as we are asked to hold here, that:
 

 “The irresistible inference is that the Legislature did not intend to change the previously existing law by including action for slander amongst those in which the remedy by attachment might be resorted to,” and, as an additional reason for such holding, said: “And when, in addition to this,, we find in the very same Code a provision is inserted allowing another provisional remedy — arrest and bail — to be used in an action where the injury is ‘to person or
 
 character’
 
 (subdivision 6 of Section 200), the conclusion is inevitable that there is no statutory provision allowing a resort to the remedy by attachment in an action for slander.”
 

 We are not cited, and we have not discovered, any other authority so holding. We do not regard the
 
 *109
 
 fact that another. provisional remedy created by statute was available to the plaintiff, nor the fact that the provision came into the statute by amendment to an act which, prior to the amendment, clearly did not include libel and slander, sufficiently controlling to distinguish the case upon either ground, but concede it to be an authority against the conclusion we have reached, and find ourselves not in accord with its logic.
 

 While the right to an attachment is a right having its origin solely in statutory law, and is in derogation of the common law, in this state the rule of strict construction does not apply to it by reason of the provisions of Section 10214, General Code:
 

 * ‘ The provisions of part third and all proceedings under it, shall be liberally construed, in order to promote its object, and assist the parties in obtaining justice. The rule of the common law, that statutes in derogation thereof must be strictly construed has no application to such part.”
 

 Part third begins with Section 10213, General Code, and concludes with Section 12367; and, while that section does not warrant the court in reading into legislation provisions that do not there appear, it precludes the reading out of legislation the provisions that do appear and the limiting of common words that ordinarily describe or denote two or more objects to a less number of objects. The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Allen, Kinkade, Jones and Matthias, JJ., concur.