[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Wayt v. DHSC, L.L.C.,* Slip Opinion No. 2018-Ohio-4822.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4822

WAYT, APPELLEE, *v.* DHSC, L.L.C., D.B.A. AFFINITY MEDICAL CENTER, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Wayt v. DHSC, L.L.C.,* Slip Opinion No. 2018-Ohio-4822.]

*Torts—Damages—R.C. 2315.18—Defamation—Cap on noneconomic compensatory damages— R.C. 2315.18(B)(2) caps noneconomic damages that can be recovered as a result of defamation.*

(No. 2017-1548—Submitted August 1, 2018—Decided December 7, 2018.)

APPEAL from the Court of Appeals for Stark County, No. 2016CA215, 2017-Ohio-7734.

_____

**FISCHER, J.**

{¶ 1} Appellee, Ann Wayt, filed a civil complaint against appellant, DHSC, L.L.C., d.b.a. Affinity Medical Center ("Affinity Medical"), alleging, among other claims, defamation. The case proceeded to trial. The only claim submitted to the

jury was for defamation. The jury found that Wayt had been defamed and awarded her $800,000 in compensatory damages and $750,000 in punitive damages.

{¶ 2} The only issue before this court is whether the cap on damages for noneconomic loss set forth in R.C. 2315.18(B)(2) applies to compensatory damages awarded for defamation. We hold that the statute unambiguously caps the noneconomic damages that can be recovered as a result of defamation, and we remand the case to the trial court for further proceedings.

## I. BACKGROUND

{¶ 3} Wayt was a nurse who was employed at Affinity Medical. Affinity Medical terminated Wayt's employment after an investigation that followed an accusation that Wayt had neglected her duties and falsified a medical record.

{¶ 4} Following Wayt's dismissal, the head of nursing at Affinity Medical sent a complaint to the Ohio Board of Nursing that included an accusation that Wayt had engaged in patient neglect. Some additional documentation was sent to the board that detailed Wayt's alleged improper conduct.

{¶ 5} Following her termination, Wayt applied for multiple nursing positions. She had only two interviews and did not obtain a permanent nursing position.

{¶ 6} The National Nurses Organizing Committee, a union and professional organization for registered nurses, filed charges against Affinity Medical before the National Labor Relations Board ("NLRB"), claiming that the hospital had refused to bargain with the union and that Wayt had been terminated because of her involvement with the union. After an administrative law judge issued a report favorable to the union, the NLRB successfully petitioned the United States District Court for the Northern District of Ohio for injunctive relief that included an order that Wayt be reinstated to her prior position at Affinity Medical. *Calatrello ex rel. Natl. Labor Relations Bd. v. DHSC, L.L.C.*, N.D. Ohio No. 5:13 CV 1538, 2014 WL 296634 (Jan. 24, 2014). The court also ordered Affinity Medical to retract the

2

report made to the Nursing Board. Wayt did return to her position, but an Affinity Medical employee allegedly stated, in front of several nurses, that the court order did not mean that Wayt deserved to regain her position or that she was a good nurse.

{¶ 7} Wayt filed a complaint in the Stark County Court of Common Pleas alleging that Affinity Medical and its employees had defamed her. At trial, the jury found that Wayt had been defamed and awarded her $800,000 in compensatory damages and $750,000 in punitive damages.

{¶ 8} Affinity Medical filed a posttrial motion requesting that the trial court apply the cap on noneconomic compensatory damages set forth in R.C. 2315.18(B)(2) and the cap on punitive damages set forth in R.C. 2315.21(D) to reduce the awards. The trial court ruled that the statutory caps on compensatory and punitive damages did not apply to injuries to reputation. The trial court also held that the punitive-damages cap is twice the amount of compensatory damages awarded, not twice the amount of compensatory damages as capped under R.C. 2315.18(B)(2).

{¶ 9} Affinity Medical filed an appeal and argued that the amount awarded in damages was in excess of the applicable caps on damages set forth in R.C. 2315.18(B)(2) and 2315.2(D). The appellate court adopted the reasoning of the trial court and overruled Affinity Medical's assignment of error relating to caps on damages. Affinity Medical then appealed to this court, presenting two propositions of law. We accepted jurisdiction over only one proposition, whether the cap in R.C. 2315.18 that applies to tort actions seeking noneconomic loss as a result of an alleged injury or loss to person or property also applies to defamation. *See* 152 Ohio St.3d 1420, 2018-Ohio-923, 93 N.E.3d 1002.

## II. ANALYSIS

{¶ 10} Affinity Medical argues that under the plain and unambiguous language of R.C. 2315.18(B), compensatory damages awarded in a defamation action must be capped. Affinity Medical also argues that the caps on punitive

damages set forth in R.C. 2315.21(D) apply and that the amount of punitive damages awarded to Wayt by the jury should be reduced accordingly.

{¶ 11} Like Affinity Medical, Wayt argues that the plain language of R.C. 2315.18 is controlling but asserts that the statutory language applies to injuries only to a person or property, not to a person's reputation. Wayt asserts that defamation is an injury to a person's reputation and is distinct from injuries to a person. She relies on Article I, Section 16 of the Ohio Constitution, which provides that courts shall be open to redress injuries to "land, goods, person, or reputation" to support her argument.

{¶ 12} Wayt further contends that R.C. 2315.18 does not cap the damages awarded for defamation because the statute applies only to negligent torts, not to intentional torts like defamation.

{¶ 13} Wayt also argues that the proposition of law presented in this case need not be answered because Affinity Medical failed to request a jury interrogatory that would have allowed it to show that the jury awarded noneconomic rather than economic damages. Wayt adds that the statute plainly applies only to noneconomic damages and that the trial court could find that the damages awarded were economic damages without an interrogatory that showed what kind of damages were awarded.

{¶ 14} Finally, Wayt argues that she was defamed on more than one occasion. Thus, argues Wayt, even if R.C. 2315.18(B)(2) does apply, the amount awarded should not be reduced and she should be awarded the statutory maximum for each instance of defamation.

### A. Standard of Review

{¶ 15} The standard of review for questions of statutory interpretation is de novo. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. When a statute is plain and unambiguous, we apply the statute as written, *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846

N.E.2d 478, ¶ 52, and no further interpretation is necessary, *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996).

### *B. Plain Meaning of the Statute*

{¶ 16} R.C. 2315.18(A)(7) provides: " 'Tort action' means a civil action for damages for injury or *loss to person or property*." R.C. 2315.18(B)(2) provides that the maximum noneconomic damages that can be awarded to a plaintiff in a tort action is, barring certain exceptions that do not apply here, $ 250,000.

{¶ 17} Property "means real and personal property." R.C. 1.59(E). The term "property" as used in R.C. 2315.18(A)(7) does not include reputation, and neither party argues to the contrary.

{¶ 18} The key question in this case is, therefore, whether defamation, which is an injury to reputation, falls within the category of injury to a person. R.C. 1.59(C) defines person as "an individual, corporation, business trust, estate, trust, partnership, and association." This definition does not provide an answer to the question before us. We have held for 90 years, however, that defamation is an injury to a person. *See Smith v. Buck*, 119 Ohio St. 101, 162 N.E. 382 (1928), paragraph two of the syllabus. We cited this decision with approval as recently as 2008. *See Nadra v. Mbah*, 119 Ohio St.3d 305, 2008-Ohio-3918, 893 N.E.2d 829.

{¶ 19} In *Buck*, this court addressed whether "slander is a 'personal injury' by a 'wrongful act,' within the intent and meaning of the proviso to section 11819, General Code." *Id.* at 101. This court held that the term "personal injury," "as defined by lexicographers, jurists and text-writers, and by common acceptance," includes injuries to a person's reputation, *id.* at paragraph one of the syllabus, and we cited with approval several cases from other jurisdictions in which those courts decided that slander or libel is an injury to a person. *See Tisdale v. Eubanks*, 180 N.C. 153, 104 S.E. 339 (1920) ("the security of one's reputation and good name [is] among the personal rights of the citizen"); *Times Democrat Publishing Co. v.*

*Mozee*, 136 F. 761, 763 (5th Cir.1905) ("At common law, libel and slander were classified as injuries to the person, or personal injuries"); *McDonald v. Brown*, 23 R.I. 546, 51 A. 213, 214 (1902) (statute providing that bankruptcy discharges debts but not judgments for willful or malicious injuries to a person or property did not discharge debts resulting from judgments in libel). These three cases remain good law.

**{¶ 20}** The court in *Buck* held that barring a phrase or definition within the statute that would lead to a contrary conclusion, injuries resulting from slander are plainly personal injuries. *Id.* at 104. Further, the court did not distinguish between personal injuries and injuries to a person. *Id.* at paragraph two of the syllabus.

**{¶ 21}** Wayt argues that the legislature's inclusion of the phrase "bodily injury" in R.C. 2315.18 demonstrates that the legislature intended to cap only damages resulting from physical injuries. The term "bodily injury" appears in R.C. 2315.18(A)(5) in the definition of "occurrence," and the term "occurrence" appears in R.C. 2315.18(B)(2). Neither of these statutory sections defines the actions to which the caps on damages apply. Thus, the legislature used no phrase or definition within R.C. 2315.18 that would lead to the conclusion that it intended the phrase "injury or loss to person" to mean "bodily injury" or anything other than its plain meaning. And, as noted above, this court has already decided that, under the plain meaning, defamation is an injury to a person.

**{¶ 22}** We hold that under the plain language of R.C. 2315.18(A)(7), defamation is a "civil action for damages for injury or loss to person." This holding, as explained above, is in accord with prior decisions of this court and several other courts that were interpreting similar language. We see no reason to overturn the well-established precedent that defamation is a "personal injury" according to the plain meaning of the term.

**{¶ 23}** We do not look to the canons of statutory construction when the plain language of a statute provides the meaning. *See Hartmann v. Duffey,* 95 Ohio St.3d

6

456, 2002-Ohio-2486, 768 N.E.2d 1170, ¶ 8, citing *Lake Hosp. Sys. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524, 634 N.E.2d 611 (1994). Assuming arguendo only that the court must look to the canons of statutory construction to determine what the legislature intended by using the phrase "injury or loss to person or property," the result in this case would be the same. It is well established that the legislature is presumed to have full knowledge of prior judicial decisions. *State ex rel. Huron Cty. Bd. of Edn. v. Howard*, 167 Ohio St. 93, 96, 146 N.E.2d 604 (1957). Thus, despite the position taken by those in the dissent, the legislature is presumed to have full knowledge of this court's decision in *Buck*. Moreover, the legislature could easily have drafted the statute to prevent the holding from that case from affecting the outcome of this case; the legislature merely needed to add "defamation" to the list of actions enumerated in R.C. 2315.18(A)(7) to which the caps do not apply.

### C. Constitutional Argument

{¶ 24} Wayt argues that the phrase "injury or loss to person or property" in R.C. 2315.18(A)(7) must be interpreted in light of the language that appears in the Ohio Constitution. Wayt highlights Article I, Section 16 of the Ohio Constitution and notes that the constitutional language distinguishes injuries to reputation from injuries to a person, lands, or goods. Article I, Section 16 of the Ohio Constitution provides, "All courts shall be open, and every person, for an injury done him in his land, goods, *person, or reputation*, shall have remedy by due course of law, and shall have justice administered without denial or delay." (Emphasis added.)

{¶ 25} Despite the state's Constitution differentiating between injuries to a person and injuries to reputation, any distinction found in the Constitution is not dispositive in this case. In this case, we must decide whether the legislature drew a distinction in R.C. 2315.18 similar to the one that appears in the Constitution.

{¶ 26} As noted above, the first step in answering that question is to interpret the plain language of the statute. We do not begin the analysis by

examining external sources in order to define the terms used in the statute. While the language in the Constitution appears to draw a distinction between injuries to a person and injuries to reputation, the distinction is not consistent with the common meaning of the terms used in R.C. 2315.18. *See Buck*, 119 Ohio St. 101, 162 N.E. 382, at paragraph two of the syllabus. Moreover, R.C. 2315.18 uses phrases that are more general than those that appear in the Constitution. R.C. 2315.18 (2)(a) uses the phrase "loss to person or property" whereas Article I, Section 16 of the Ohio Constitution provides that courts are open to redress injuries done to a person's "land, goods, person, or reputation." The statutory term "property" is encompassing of the constitutional terms "lands [or] goods." Similarly, the statutory term "loss to person" encompasses the injuries described in the Constitution as injuries to a person as well as injuries to a person's reputation.

{¶ 27} For these reasons, we decline Wayt's invitation to hold that R.C. 2315.18 does not apply to an injury to reputation or to hold that defamation is not a "tort action" as it is defined in R.C. 2315.18(A)(7).

### D. S.B. 80 and Legislative Intent

{¶ 28} Wayt argues that the statement of findings and intent made in Am.Sub.S.B. No. 80, Section 3, 150 Ohio Laws, Part V, 7915, 8024 ("S.B. 80"), indicates that the legislature intended in R.C. 2315.18 to limit damages in negligence-based cases only. From this, Wayt concludes that there is no cap on damages for defamation claims because defamation is an intentional tort, not a negligence-based tort.

{¶ 29} Again, we do not look at legislative intent to determine the meaning of a statute when the statute is unambiguous. *Dunbar v. State,* 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16. However, even if we did review S.B. 80 to determine the legislative intent, the text and history of S.B. 80, when viewed in conjunction, do not support Wayt's argument.

8

**{¶ 30}** Section 3(A)(3) of S.B. 80 provides that the state has a rational and legitimate interest in ensuring that it has a system that balances the rights of those injured by *negligent behavior* and the need to eradicate frivolous lawsuits that cost jobs. This statement, when read in context with the codified sections of the bill, is one of several intentions behind the bill.

**{¶ 31}** For example, as enacted in S.B. 80, R.C. 4507.07(B) provides that any person who signs an application for a driver's license for a minor is jointly and severally liable for "*negligence or wanton or willful misconduct*" committed by that minor while the minor is driving. (Emphasis added.)

**{¶ 32}** And, as enacted in S.B. 80, R.C. 1775.14(B) provides that

> a partner in a registered limited liability partnership is not liable * * * for debts, obligations, or other liabilities of any kind of, or chargeable to, the partnership or another partner or partners arising from *negligence or from wrongful acts, errors, omissions, or misconduct*, whether or not intentional or characterized as tort, contract, or otherwise.

(Emphasis added.)

**{¶ 33}** If, as Wayt suggests, the legislature's sole intent when passing S.B. 80 was to "remedy negligent behavior," the above-cited sections, which deal with behavior other than negligent behavior, would not be part of S.B. 80. In light of this conclusion, the argument that the legislature's *sole intent* behind S.B. 80 was to address negligence claims does not pass muster.

**{¶ 34}** Moreover, interpreting R.C. 2315.18 in the way that Wayt suggests would require the court to add the word "negligence" to the definition of "tort actions" provided in R.C. 2315.18(A)(7). " '[I]t is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words

not used.' " (Emphasis omitted; brackets added in *Bernardini*.) *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.*, 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979), quoting *Columbus-Suburban Coach Lines v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969). For these reasons, we decline to interpret R.C. 2315.18 to cap damages awarded only in negligence cases.

### E. Remaining Issues

{¶ 35} In her brief, Wayt argues that even if the caps on damages set forth in R.C. 2315.18 do apply to defamation claims, the award of compensatory damages in this case should not be reduced because there was more than one incident of defamation. Also, because the caps apply only to noneconomic damages, Wayt claims that this court could determine that the jury awarded Wayt economic damages, which have no statutory cap. In its brief, Affinity Medical requests that the court order that the punitive-damages cap set forth in R.C. 2315.21(D) be applied to the award in this case.

{¶ 36} No proposition of law arguing these issues was accepted by this court, and we decline to address these arguments because they are beyond the scope of this appeal.

### III. CONCLUSION

{¶ 37} For the foregoing reasons, we reverse the judgment of the court of appeals as to compensatory damages, and we remand the case to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

KENNEDY, FRENCH, and DEWINE, JJ., concur.

DEGENARO, J., concurs in judgment only.

O'CONNOR, C.J., dissents, with an opinion joined by O'DONNELL, J.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 38} I dissent.  At issue in this case is whether the damage caps in R.C. 2315.18 apply when a court awards damages to a person for defamation.  R.C. 2315.18 provides that its caps apply to damages resulting from "an injury or loss to person or property."  The majority concludes that the statute is unambiguous and that the plain language of the statute provides its meaning, ultimately determining that "the statutory term 'loss to person' encompasses the injuries described in the Constitution as injuries to a person as well as injuries to a person's reputation." Majority opinion at ¶ 26.  But in construing R.C. 2315.18, the majority relies on a 90-year-old case in which this court interpreted the term "personal injury" as well as numerous cases outside this jurisdiction that consider injury to reputation in the context of common law rather than in the context of Ohio's constitutional and statutory schemes.  The majority's reliance on those cases shows that it has *not* relied on the plain meaning of the statute.  By considering case law, the majority is engaging in exactly the kind of statutory interpretation that it claims is unnecessary.

{¶ 39} If we look only at the words in the statute, it is clear that injury or loss to person does not include loss of reputation.  If an injury to a person occurs, then there is an identifiable harm to the person's body and typically a course of action for healing it, often with medical aid.[1]  There is also identifiable and relatively quantifiable harm to establish damages and a financial remedy.

{¶ 40} On the other hand, a person's reputation is separate from her or his body, and the person has little control over it—reputation exists entirely in the hearts and minds of others.  The lack of control over one's own reputation is one reason that the tort of defamation is so menacing.  A person can be of upstanding

---

1. Noneconomic compensatory damages caps do not apply to "[p]ermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system," R.C. 2315.18(B)(3)(a), or to "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities," R.C. 2315.18(B)(3)(b).

character, yet when someone defames her or him, there is no well-defined solution for piecing reputation back together or even for determining the damage. A reputation damaged by defamation is not fixed by mending it; one can only attempt to repair reputation by convincing each and every person who observed the defamatory statement that it is not true. It is often nearly impossible to determine whether reputation is restored or to quantify the damage. In part, that is why a victim of defamation per se, that is, defamation that is clear on its face, does not have to prove damages. *Becker v. Toulmin*, 165 Ohio St. 549, 553, 138 N.E.2d 391 (1956).

{¶ 41} Defamation is an injury or loss to reputation, not to person, and therefore the caps on damages in R.C. 2315.18 do not apply when a person is defamed. Although statutory interpretation is unnecessary given the plain meaning of R.C. 2315.18, the exercise bears out this conclusion.

{¶ 42} The Ohio Constitution reinforces the distinctions between person and reputation. The framers, recognizing the differences between these injuries, ensured access to the courts for both wrongs. Article I, Section 16 provides that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law." The majority does not explain why we should assume that when the General Assembly drafted R.C. 2315.18, it was aware of two of this court's decisions that were spread over a span of 90 years but was not aware of Ohio's Constitution, our government's preeminent controlling document. But it stands that "no portion of a written constitution should be regarded as superfluous." *Steele, Hopkins & Meredith Co. v. Miller*, 92 Ohio St. 115, 120, 110 N.E. 648 (1915). In drafting R.C. 2315.18, the General Assembly clearly chose to subsume land and goods under the single label of property. No similar effort was made to combine person and reputation. Instead, the General Assembly left out any reference to reputation. The Constitution authorizes the courts to remedy four kinds of injuries, and the General Assembly

included only three of them in R.C. 2315.18. The only conclusion I can reach is that the General Assembly did not wish to cap damages for people who are defamed.

{¶ 43} Instead of relying on a clear constitutional provision establishing that injury to reputation and injury to person are two separate harms, the majority mistakenly depends on this court's 1928 interpretation of the term "personal injury," *Smith v. Buck*, 119 Ohio St. 101, 162 N.E. 382 (1928). That reliance is misplaced. The term at issue in this case is "injury to person." The court had two holdings in *Buck*:

> The words "personal injury" as defined by lexicographers, jurists and text-writers, and by common acceptance, denote an injury either to the physical body of a person or to the reputation of a person, or to both.
>
> The words "personal injury" by "wrongful act," of section 11819, General Code, comprehend, among other injuries to the person, injury by libel or slander.

*Buck* at paragraphs one and two of the syllabus.

{¶ 44} In reaching these conclusions, the court in *Buck* primarily considered the definition of the word "personal," which it found to mean "pertaining to the person" or " 'relating to an individual.' " *Id*. at 101, quoting *Webster's New International Dictionary*. It is true that a reputation generally pertains to or is related to a person, but R.C. 2315.18 does not refer to loss or injury *relating* to a person but refers to "loss or injury to person." The first syllabus paragraph in *Buck* addresses only "personal injury" and does not squarely support the majority's position in this case.

**{¶ 45}** The second paragraph of *Buck* is at least ambiguous and should not be the basis for interpreting a statute today, 90 years after this court decided that case. The second syllabus paragraph can be construed to stand for the proposition that personal injury includes injury to the person as well as injury by libel or slander. This interpretation is entirely consistent with my reading of R.C. 2315.18. Because the law at issue in *Buck* does not contain the language "injury to person," the holding does not define that term and cannot determine the outcome of this case. Further, if the General Assembly was focused on this case when it drafted R.C. 2315.18, then it could have used the term "personal injury" when it described torts to which the caps applied, in an effort to combine injury to person and injury to reputation. It did not.

**{¶ 46}** The majority also includes a string cite of cases that the *Buck* court relied on. Although still technically good law, these cases are either unpersuasive or help to establish that R.C. 2315.18 does not apply to loss of reputation. In *Tisdale v. Eubanks*, 180 N.C. 153, 104 S.E. 339, 340 (1920), the North Carolina Supreme Court conflated character and reputation in order to find that libel is injury to the person. In *Times-Democrat Publishing Co. v. Mozee*, 136 F. 761, 762 (5th Cir.1905), one of Ohio's most famous daughters, Annie Oakley, sought damages for "shame, disgrace, and mental suffering." In the manner of the decision in *Tisdale*, the court in *Mozee* described the claims as "injuries to character and mental suffering" and invoked the common law. *Id.* But the situation of appellee, Ann Wayt, is distinguishable from the circumstances in both *Tisdale* and *Mozee* because of Wayt's free-standing defamation claim. Wayt has no need to prove injury in the form of shame, disgrace, or mental suffering, all of which could be construed as injury to the person. Wayt's damages resulted from loss of reputation, not injury to person, and those damages were assumed after she proved her claim of defamation per se.

**{¶ 47}** Further, the courts in both *Tisdale* and *Mozee* relied on common law. Traditionally, the common law protected three types of personal rights: personal security, personal liberty, and private property. The right of personal security was divided into life, limb, body, health, and reputation.

> Reputation is a sort of right to enjoy the good opinion of others, and is capable of growth and real existence, as an arm or a leg. If it is not to be classed as a personal right, where does it belong? No provision has been made for any middle class of injuries between those to person and those to property, and the great body of wrongs arrange themselves under the one head or the other.

*Mozee,* quoting *Johnson v. Bradstreet Co.,* 87 Ga. 79, 13 S.E. 250, 251 (1891). *Tisdale* and *Mozee* are wholly inapposite because Ohio's Constitution specifically answers the question "where does [reputation] belong?" by recognizing a middle class of injuries and creating an entirely separate action for loss or injury to reputation that supplants the common law's less differentiated protections. Because the Ohio Constitution recognizes injury to reputation as separate from injury to person, the court is amiss in relying on cases depending on common-law causes of action. *See, e.g., Drake v. Rogers*, 13 Ohio St. 21, 29 (1861) ("wherever the legislature has by statutory law assumed to establish either rules of property or conduct, it has always been the policy of the law in this state, or at least such is the generally received understanding, that the common law can neither add to nor take from the statutory rules so established").

**{¶ 48}** In the last case that the majority cites, *McDonald v. Brown*, 23 R.I. 546, 51 A. 213, 214 (1902), the Rhode Island Supreme Court construed the term "injury to the person" "in its broad and general sense." But in *State v. Simmons,* 114 R.I. 16, 19, 327 A.2d 843 (1974), the Rhode Island court declined to extend its

own finding in *McDonald*, taking a narrower view and holding that " 'injury to the person' contemplates the peril of actual bodily harm and does not include danger to reputation alone." *Id*. If Rhode Island's own Supreme Court refused to rely on *McDonald* because it " 'would verge upon speculation with reference to the legislative intent,' " *id.*, quoting *Commerce Oil Refining Corp. v. Miner*, 98 R.I. 14, 18, 199 A.2d 606 (1964), it stands to reason that we should also view the case with skepticism.

**{¶ 49}** This court's decision in *Nadra v. Mbah*, 119 Ohio St.3d 305, 2008-Ohio-3918, 893 N.E.2d 829, which the majority also cites favorably, is likewise unpersuasive. The court in *Nadra* cited *Buck* for the proposition that "personal injury includes injury to one's body and injury to one's reputation." *Id.* at ¶ 26. But *Nadra* does not stand for the proposition that an injury to person includes defamation.

**{¶ 50}** The court in N*adra* relied on the same case that appellant, DHSC, L.L.C., d.b.a. Affinity Medical Center, points to now: *Lawyers Coop. Publishing Co. v. Muething*, 65 Ohio St.3d 273, 603 N.E.2d 969 (1992). But *Muething* did not involve an allegation of defamation, libel, or slander. *Muething*'s claimed loss of reputation arose from his reliance on legal forms that Lawyers Cooperative wrote and published. Indeed, the court held that "Muething's claims for humiliation and damage to his reputation are virtually indistinguishable from his claim for negligent infliction of emotional distress and, therefore, could not be maintained in the absence of an assertion that he feared or saw some quantifiable physical loss." *Id.* at 280. *Muething* is inapplicable to defamation claims.

**{¶ 51}** The majority's position is also unsupported by the dictionary definitions of the statute's key terms. *Black's Law Dictionary* 506 (10th Ed.2014) defines defamation as "[m]alicious or groundless harm to the reputation or good name of another by the making of a false statement to a third person." Reputation means "[t]he esteem in which someone is held or the goodwill extended to or

confidence reposed in that person by others, whether with respect to personal character, private or domestic life, professional and business qualifications, social dealings, conduct, status, or financial standing." *Id.* at 1497. *Black's* defines person as a "human being." *Id.* at 1324.

{¶ 52} Applying these definitions to R.C. 2315.18 demonstrates that the law does not limit damages to a person who proves defamation. Reputation is the esteem in which someone is held by others, often in respect to personal character. It is not the person's actual character. It is separate and apart from the human being. Reputation exists in the minds of others.

{¶ 53} In a defamation action, the alleged injury or loss is to a person's reputation, not to one's being or possessions. Consequently, I would hold that the plain language of the statute does not cap damages for people who are defamed. I would affirm the judgments of the trial and appellate court.

{¶ 54} I dissent.

O'DONNELL, J., concurs in the foregoing opinion.

————————————

B. Zimmerman Law and Brian L. Zimmerman; and Crabbe, Brown & James, L.L.P., and Andrew G. Douglas, for appellee.

Hanna, Campbell & Powell, L.L.P., Douglas G. Leak, W. Bradford Longbrake, Frank G. Mazgaj, and Emily R. Yoder; and Howard & Howard Attorneys and Michael O. Fawaz, for appellant.

Elfvin, Klingshirn, Royer & Torch, L.L.C., and Christina Royer; and McCarthy, Lebit, Crystal & Liffman Co., L.P.A., and Colin R. Ray, urging affirmance for amicus curiae Ohio Employment Lawyers Association.

Cooper & Elliot, L.L.C., C. Benjamin Cooper, and Charles H. Cooper, urging affirmance for amicus curiae Ohio Association for Justice.

————————————