[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lingle v. State*, Slip Opinion No. 2020-Ohio-6788.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6788

LINGLE ET AL., APPELLANTS, *v*. THE STATE OF OHIO ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lingle v. State*, Slip Opinion No. 2020-Ohio-6788.]

*Former R.C. 2950.09—Out-of-state sex offenders challenging their automatic designation as a sexual predator in Ohio—In making a determination under former R.C. 2950.09(F)(2), a trial court is to examine why the out-of-state offender was required to register for life and whether that reason is substantially similar to a classification as a sexual predator in Ohio under former R.C. Chapter 2950—Former R.C. 2950.09(F) does not allow for a recidivism hearing.*

(Nos. 2019-1247 and 2019-1309—Submitted July 8, 2020—Decided December 23, 2020.)

APPEAL from and CERTIFIED by the Court of Appeals for Franklin County, Nos. 17AP-251 and 17AP-252, 2019-Ohio-2928.

_____

**KENNEDY, J.**

{¶ 1} This is a discretionary appeal and certified conflict from the Tenth District Court of Appeals. It requires this court to determine what a sex offender whose offenses were committed in another state must prove pursuant to former R.C. 2950.09(F)(2) in order to successfully have the automatic sexual-predator classification under former R.C. 2950.09(A) removed.

{¶ 2} In this case, the trial court incorrectly determined that out-of-state offenders who are automatically required to register as sexual predators in Ohio pursuant to former R.C. 2950.09(A) must prove that they are not likely to commit another sexually oriented offense to successfully challenge the sexual-predator classification. We hold that the court of appeals was correct to reverse the trial court's judgment and remand the cause for further proceedings. However, we reject the court of appeals' holding that a sex offender who is subject to lifetime registration in another state must be permanently classified as a sexual predator in Ohio if the other state's lifetime registration requirements (such as the frequency of reporting) are substantially similar to Ohio's registration requirements for a person classified as a sexual predator.

{¶ 3} Based on the plain language of former R.C. 2950.09(F)(2) and the statutory scheme as a whole, we hold that an out-of-state offender challenging his or her automatic designation as a sexual predator under former R.C. 2950.09(A) must prove by clear and convincing evidence first, the reason for the imposition of the lifetime registration requirement in the other state and second, that the reason for the lifetime registration requirement is not substantially similar to a classification as a sexual predator under former R.C. Chapter 2950.

{¶ 4} We therefore affirm in part and reverse in part the judgment of the court of appeals, and we remand this matter to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

### Facts and procedural history

{¶ 5} Appellant Harmon Lingle pleaded guilty to committing a lewd and lascivious act in Florida and was classified as a sex offender. When he moved to Ohio in 2008 after serving his prison sentence, he was initially classified as a sex offender before being reclassified as a sexual predator based on his lifetime registration requirement in Florida.

{¶ 6} Appellant Mark Grosser pleaded no contest in Florida to solicitation of a minor over the Internet and transmitting material harmful to a juvenile; he was classified as a sex offender in Florida and sentenced to jail and probation. In 2008, his probation was transferred to Ohio, where he was classified as a Tier I sex offender before being reclassified as a sexual predator, also because of his lifetime registration requirement in Florida.

{¶ 7} In separate actions brought against the Ohio Attorney General and the Franklin County sheriff, Lingle and Grosser sought a declaratory judgment that they had been incorrectly classified as sexual predators and subject to mandatory lifetime registration requirements. They argued that they should have been classified as sexually oriented offenders in 2008.

{¶ 8} Lingle also sought a declaration that because he had already registered for the ten-year period required for sexually oriented offenders, the Ohio Attorney General must remove him from Ohio's sex-offender database, while Grosser sought a declaration that his registration requirement would terminate in 2018. The trial court consolidated the actions.

{¶ 9} Lingle and Grosser moved for judgment on the pleadings, which the trial court granted in part and denied in part. The trial court determined that former R.C. 2950.09(A), 2006 Am.Sub.S.B. No. 260, is the version of Ohio's sex-offender-registration statute that applies in this case and found that under that statute, Lingle and Grosser were properly classified as sexual predators in Ohio

based on their convictions in Florida. However, the trial court determined that under former R.C. 2950.09(F)(2), Lingle and Grosser are entitled to an evidentiary hearing at which they would have the opportunity to prove that they had been convicted in Florida of offenses that are substantially similar to violations of Ohio laws that would result in classifications as sexually oriented offenders and therefore should have their sexual-predator classifications removed. At that hearing, the trial court explained, Lingle and Grosser would have the burden to prove by clear and convincing evidence that they are not likely to commit another sexually oriented offense.

{¶ 10} The Tenth District Court of Appeals reversed, holding that former R.C. 2950.09(F)(2) does not require a hearing to determine whether an out-of-state sex offender automatically classified as a sexual predator is likely to reoffend and does not require the trial court to determine whether the sex offender would have been classified as a sexual predator if the conviction had occurred in Ohio. 2019-Ohio-2928, 140 N.E.3d 1031, ¶ 23-24, 28. Instead, the court interpreted former R.C. 2950.09(F)(2) as requiring the trial court to determine whether Lingle and Grosser "presented clear and convincing evidence demonstrating that the registration requirements for Florida sexual offenders are not substantially similar to Ohio's applicable sexual predator classification." *Id*. at ¶ 32. The appellate court remanded the case to the trial court to make that determination in the first instance.

{¶ 11} We accepted Lingle's and Grosser's appeal on the following proposition of law:

> A person with an out-of-state sex offense conviction cannot be required to register in Ohio as a "sexual predator" if they can show that their home-state registration requirement is not substantially similar to Ohio law because the person is not likely to

4

reoffend, and therefore does not fit the statutory definition of "sexual predator" in R.C. 2950.01(E).

*See* 157 Ohio St.3d 1502, 2019-Ohio-4768, 134 N.E.3d 1226.

**Conflict cases**

{¶ 12} The Tenth District also certified that its judgment conflicted with judgments of the First and Fifth District Courts of Appeals, which held that if an out-of-state sex offender petitions a court pursuant to former R.C. 2950.09(F)(1) challenging his or her automatic classification as a sexual predator under former R.C. 2950.09(A), then the trial court must apply a two-step analysis. *See State v. Pasqua*, 157 Ohio App.3d 427, 2004-Ohio-2992, 811 N.E.2d 601 (1st Dist.); *State v. Forsythe*, 2013-Ohio-3301, 996 N.E.2d 996 (5th Dist.). Under that two-step analysis, the trial court must first determine whether the sexually oriented offense in the other state is substantially similar to a sexual-predator classification under Ohio law; if so, then the out-of-state offender is entitled to a hearing to prove by clear and convincing evidence that he or she is not likely to commit another sexually oriented offense. *Pasqua* at ¶ 22; *Forsythe* at ¶ 20.

{¶ 13} We agreed that a conflict exists, consolidated the conflict case with the jurisdictional appeal, and ordered the parties to brief the following conflict question:

> "Does R.C. 2950.09(F) provide out-of-state offenders challenging their R.C. 2950.09(A) automatic sexual predator classification with a right to an evidentiary hearing whereby the offender must prove by clear and convincing evidence that he or she is not likely to commit a sexually-oriented offense in the future?"

157 Ohio St.3d 1501, 2019-Ohio-4768, 134 N.E.3d 1228, quoting the court of appeals' journal entry.

## ANALYSIS

### Statutory construction

{¶ 14} This case returns us to a familiar place: statutory construction. In construing a statute, we do not ask "what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000).

{¶ 15} To determine the plain meaning of a statute, a court relies on the definitions provided by the legislative body. *See Fox v. Std. Oil Co. of New Jersey*, 294 U.S. 87, 96, 55 S.Ct. 333, 79 L.Ed. 780 (1935). When a term is not defined in the statute, we give the term its plain and ordinary meaning. *Brecksville v. Cook*, 75 Ohio St.3d 53, 56, 661 N.E.2d 706 (1996). And "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

### Former R.C. 2950.09 and out-of-state offenders

{¶ 16} Under Ohio's version of Megan's Law, if a person has committed a sexually oriented offense in another state and is required "as a result of [a] conviction" for that offense to register as a sex offender for life in the other state, "that conviction * * * automatically classifies the person as a sexual predator" in Ohio. Former R.C. 2950.09(A). Under former R.C. 2950.09(A), the automatic sexual-predator classification of certain sex offenders entering Ohio is based mainly on one factor—the length of the registration requirement in the other state. If the offender has to register for life in the other state, then the offender is classified

as the type of offender who must register for life in Ohio, i.e., a sexual predator. But that classification is not necessarily permanent—Ohio offers such an offender the opportunity to challenge the classification as a sexual predator by petitioning the court through the process set forth in former R.C. 2950.09(F) ("the Removal Provision"). The key portion of the Removal Provision reads:

> The court may enter a determination that the offender * * * filing the petition described in division (F)(1) of this section is not an adjudicated sexual predator in this state for purposes of the registration and other requirements of this chapter * * * only if the offender * * * proves by clear and convincing evidence *that the requirement of the other jurisdiction that the offender * * * register* as a sex offender until the offender's * * * death *is not substantially similar to a classification as a sexual predator for purposes of this chapter*. If the court enters a determination that the offender * * * is not an adjudicated sexual predator in this state for those purposes, the court shall include in the determination a statement of the reason or reasons why it so determined.

(Emphasis added.) Former R.C. 2950.09(F)(2).

{¶ 17} This provision ensures that even though former R.C. 2950.09(A) requires that an automatic sexual-predator classification be imposed on out-of-state sex offenders based on the other state's lifetime registration sanctions, there remains an opportunity to rebut the automatic classification. Under the Removal Provision, the out-of-state offender is evaluated in a manner that corresponds with how an Ohio offender is evaluated. Under former R.C. 2950.09, sex offenders who committed their offenses in Ohio were classified based on the nature of the offense, *see* former R.C. 2950.09(A), or on the trial court's determination after a hearing

following a conviction for a sexually oriented offense, *see* former R.C. 2950.09(B)(1)(a), and the registration requirement follows from the classification, *see* former R.C. 2950.07(B)(1), Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6558, 6681. In Ohio, a sexual predator is not defined as someone who has to register for life; the sexual predator has to register for life because he has been classified as a sexual predator. That is, the classification comes first, followed by the registration requirement. The Removal Provision allows for the out-of-state sex offender to be evaluated based on what caused the offender to be required to register as a sex offender for life rather than based on the sanctions that followed the conviction. As explained below, the plain language of the statute reflects this purpose.

**Former R.C. 2950.09(F)(2) is unambiguous, and a trial court must ascertain what caused the requirement that an out-of-state offender register until death and whether that is substantially similar or is not substantially similar to a classification as a sexual predator under former R.C. Chapter 2950**

{¶ 18} Before we focus on the word "requirement" in former R.C. 2950.09(F)(2), we look to what the other language of the statutory provision tells us. The opening clause of the statutory provision tells us that an Ohio trial court may determine that an out-of-state offender "*is not an adjudicated sexual predator*," and the concluding sentence reiterates that point with a proviso that if the trial court makes the determination that an out-of-state offender is not a sexual predator, then the court must issue a statement stating its reasons for making such a finding. The language of the provision also tells us that whatever the trial court must consider from the other state is compared to Ohio's sexual-predator classification as determined under former R.C. 2950.09.

{¶ 19} The General Assembly in former R.C. 2950.09(A) provided that certain categories of sexually oriented convictions subject the offender to automatic classification as a sexual predator. First, former R.C. 2950.09(A) identifies several crimes that automatically classify an offender as a sexual predator in Ohio:

[1] If a person is convicted of or pleads guilty to committing * * * a sexually oriented offense that is not a registration-exempt sexually oriented offense, and if the sexually oriented offense is a violent sex offense or a designated homicide, assault, or kidnapping offense and the offender is adjudicated a sexually violent predator in relation to that offense, the conviction of or plea of guilty to the offense and the adjudication as a sexually violent predator automatically *classifies* the offender as a sexual predator for purposes of this chapter. [2] If a person is convicted of or pleads guilty to committing * * * a sexually oriented offense that is a violation of division (A)(1)(b) of section 2907.02 of the Revised Code and if either the person is sentenced under section 2971.03 of the Revised Code, or the court imposes upon the offender a sentence of life without parole under division (B) of section 2907.02 of the Revised Code, the conviction of or plea of guilty to the offense automatically *classifies* the offender as a sexual predator for purposes of this chapter. [3] If a person is convicted of or pleads guilty to committing * * * attempted rape and also is convicted of * * * a specification of the type described in section 2941.1418, 2941.1419, or 2941.1420 of the Revised Code, the conviction of * * * the offense and the specification automatically *classify* the offender as a sexual predator for purposes of this chapter.

(Emphasis added.) These three categories of convictions lead to the automatic *classification* of the offender as a sexual predator.

{¶ 20} For sexually oriented convictions that do not lead to automatic sexual-predator classification, former R.C. 2950.09(B)(1)(a) commands the trial

court responsible for sentencing the offender to conduct a hearing to determine whether the offender is a sexual predator, including a consideration of factors listed in former R.C. 2050.09(B)(3).

{¶ 21} Former R.C. 2950.09(A) also discusses out-of-state convictions that lead to an automatic sexual-predator classification if the other state has a requirement associated with those convictions that the offender register as a sex offender for life:

> If a person is convicted * * * in a court in another state * * * for committing a sexually oriented offense that is not a registration-exempt sexually oriented offense and if, as a result of that conviction * * * the person is *required*, under the law of the jurisdiction in which the person was convicted, * * * to register as a sex offender until the person's death, that conviction * * * automatically classifies the person as a sexual predator for the purposes of this chapter, but the person may challenge that classification pursuant to division (F) of this section.

(Emphasis added.)

{¶ 22} The language of former R.C. 2950.09(A) reveals that if the out-of-state conviction results in a *requirement* of lifetime registration, then the sexual-predator classification under Ohio law is automatic but may be challenged under former R.C. 2950.09(F). With this understanding, we return to former R.C. 2950.09(F) for consideration of what an out-of-state offender is required to prove to overcome the automatic sexual-predator classification.

{¶ 23} The grammatical structure of former R.C. 2950.09 leads to the conclusion that the reason the out-of-state offender must register as a sex offender for life—rather than the specifics of the other state's reporting obligations—is the

focus of the trial court's inquiry under former R.C. 2950.09(F)(2). The term "requirement" in former R.C. 2950.09(F)(2) is not modified by the term "registration"—the statute does not speak of registration requirements. The term "requirement of the other jurisdiction" is modified by an adjectival clause: "that the offender * * * register as a sex offender until * * * death." *Id.* The adjectival clause provides a description of the requirement. And that clause contains only a single attribute describing the requirement. Therefore, former R.C. 2950.09(F)(2) relates to only one requirement of the other jurisdiction: that the offender must register until death. It does not relate to the entire bundle of responsibilities that come with sex-offender registration.

{¶ 24} "Requirement" in former R.C. 2950.09(F)(2) refers to—and is a nominalization of—the word "required" in former R.C. 2950.09(A) and 2950.09(F)(1)(b). In addressing out-of-state offenders, former R.C. 2950.09(A) subjects to the sexual-predator classification offenders who are "*required,* under the law of the jurisdiction in which the person was convicted, * * * to register as a sex offender until the person's death." (Emphasis added.) The word "required" appears again in former R.C. 2950.09(F)(1)(b). There, the statute includes an offender as eligible to challenge a sexual-predator classification only if "[a]s a result of the conviction * * * described in division (F)(1)(a) of this section, the offender * * * is *required* under the law of the jurisdiction under which the offender * * * was convicted * * * to register as a sex offender until the offender's * * * death." (Emphasis added.)

{¶ 25} Therefore, the word "requirement" in former R.C. 2950.09(F)(2) refers to the law of the other jurisdiction that *requires* lifetime registration. The requirement for lifetime registration might spring directly from the conviction for a particular offense, it might result from an adjudicative process following the conviction, it might be the default registration for all sexually oriented offenses, or it might result for another reason. The General Assembly did not use specific

11

language other than that the "requirement" of the other state should be compared to the classification of a sexual predator in Ohio.

{¶ 26} The difficulty with former R.C. 2950.09(F)(2) is the seeming incongruity of comparing a requirement with a classification. Although we know that a sexual-predator assignment is called a "classification" in Ohio, the General Assembly would not have known what other states called such an assignment; the General Assembly would have known only that other states *require* some offenders to register until death, as Ohio requires offenders classified as sexual predators to do. The General Assembly took the central requirement of sexual-predator status— lifetime registration—and automatically classified as sexual predators offenders with lifetime registration requirements from other states. However, it gave out-of-state offenders the opportunity to overcome that automatic classification.

{¶ 27} While former R.C. 2950.09(A) is not concerned with the reason behind the requirement to register as a sex offender for life in the other state, former R.C. 2950.09(F)(2) addresses the issue of *why* the offender was ordered to register as a sex offender until his or her death. In Ohio, sexual-predator classification starts with the conviction. Former R.C. 2950.09(A) lists three categories of convictions that automatically classify an offender as a sexual predator, and former R.C. 2950.09(B)(1)(a) sets forth a process for the judge who is to sentence the person convicted of a sexually oriented offense to conduct a hearing to determine whether the offender is a sexual predator, including a consideration of factors listed in former R.C. 2050.09(B)(3). Whether automatic or through a hearing, the classification of an offender as a sexual predator flows from the conviction. Under former R.C. 2950.09(F)(2), Ohio's classification is compared with the other state's requirement of lifetime registration resulting from the conviction to determine whether the reasons behind each are substantially similar.

{¶ 28} The legislature could have brought more clarity had it chosen to use the word "reason" instead of the catchall term "requirement" in former R.C.

12

2950.09(F)(2), but the absence of that word does not affect the plain meaning of the statute. The statute states that the offender petitioning under former R.C. 2950.09(F) must prove "by clear and convincing evidence that the *requirement of the other jurisdiction that the offender * * * register as a sex offender until the offender's * * * death* is not substantially similar to a classification as a sexual predator for purposes of this chapter." Former R.C. 2950.09(F)(2). (Emphasis added.) In short, the offender must prove first, the reason for the imposition of the lifetime registration requirement in the other state and second, that the reason for the lifetime registration requirement is not substantially similar to a classification as a sexual predator under former R.C. Chapter 2950.

**Former R.C. 2950.09(F) does not allow for a recidivism hearing**

{¶ 29} The conflict question for which we ordered briefing concerns whether former R.C. 2950.09(F) provides an out-of-state sex offender challenging his or her former R.C. 2950.09(A) automatic sexual-predator classification with a right to an evidentiary hearing at which the offender has the opportunity to prove by clear and convincing evidence that he or she is not likely to commit a sexually oriented offense in the future. Lingle and Grosser argue that they are entitled to hearings at which they may present evidence demonstrating that they are unlikely to reoffend and therefore should not be adjudicated sexual predators. They tie this argument to the definition of sexual predator in former R.C. 2950.01(E)(1), 2006 Am.Sub.S.B. No. 260: "The person has been convicted of or pleaded guilty to committing a sexually oriented offense * * * and is likely to engage in the future in one or more sexually oriented offenses." But there is nothing in former R.C. 2950.09(F) that suggests that an out-of-state offender's challenge of a sexual-predator classification requires an individualized hearing about the likelihood of recidivism or that to be classified as a sexual predator for offenses that occur in another state, the offender must meet Ohio's statutory definition of a sexual predator. When a hearing is required under former R.C. 2950.09, the General

Assembly explicitly said so, *see, e.g.*, former R.C. 2950.09(B)(1), and there is no recidivism-hearing process set forth in former R.C. 2950.09(F). The intent of former R.C. 2950.09(F) is not to give offenders from other states a do-over of the classification they received in another state; it is to allow the offender who is required to register as a sex offender for life in another state to prove that the reasons for that requirement are sufficiently different from a sexual-predator classification in Ohio that the out-of-state offender should not be classified as a sexual predator in Ohio. The potential for recidivism plays no part in the process set forth in former R.C. 2950.09(F). We therefore answer the conflict question in the negative.

### The dissent's reading of the Removal Provision is untenable

{¶ 30} It is apparent from the statutory language in former R.C. 2950.09(F) that the General Assembly trusts Ohio's trial judges to be able to determine whether another state's requirement that a sex offender register for life is substantially similar to an Ohio sex offender's classification as a sexual predator. There are at least three factors that demonstrate that the dissent's interpretation of the relevant statutory language—"the requirement of the other jurisdiction that the offender * * * register as a sex offender until the offender's * * * death is not substantially similar to a classification as a sexual predator"—as requiring courts to compare the registration requirements of Ohio with the other state's registration requirements is untenable. First, former R.C. 2950.09(F)(2) speaks of "the requirement of the other jurisdiction"; the word "requirement" is singular, whereas there are multiple registration requirements for sex offenders in Ohio, including where the offender must register (R.C. 2950.04), with whom the offender must register (R.C. 2950.04), how often the offender must register (R.C. 2950.06), and the information the offender must provide (R.C. 2950.04 and 2950.05), among other things. Further, regarding Ohio, the statute refers to *a* classification, not a series of requirements. Second, if the other state's registration requirements were to be compared to Ohio's registration requirements, it is likely that the General Assembly would have

14

included references to the statutes that contain Ohio's registration requirements; in dozens of instances, former R.C. 2950.09 refers to other statutes for other purposes. Finally, requiring trial courts to match up the procedural details of the reporting requirements between jurisdictions would not aid the court in determining whether the out-of-state offender's obligation to register as a sex offender for life is substantially similar to the classification of a sexual predator under Ohio law. The duty to register for life flows from an offender's being classified a sexual predator. And the only thing that can inform the trial court whether the out-of-state offender's obligation to register as a sex offender for life is substantially similar to that classification is why the out-of-state offender was required to register for life.

{¶ 31} Therefore, in making its determination under R.C. 2950.09(F)(2), the trial court is to examine why the out-of-state offender was required to register for life and whether that reason is substantially similar to a classification as a sexual predator in Ohio under former R.C. Chapter 2950.

## CONCLUSION

{¶ 32} For these reasons, we affirm in part and reverse in part the judgment of the court of appeals, and we remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BERGERON and STEWART, JJ., concur.

DONNELLY, J., concurs, with an opinion.

DEWINE, J., concurs in part and dissents in part, with an opinion joined by O'CONNOR, C.J., and FISCHER, J.

PIERRE BERGERON, J., of the First District Court of Appeals, sitting for FRENCH, J.

_____

**DONNELLY, J., concurring.**

{¶ 33} I concur in the court's judgment and fully join the majority opinion. I write separately only to note that in imposing registration and community-notification requirements under R.C. Chapter 2950, the General Assembly intended to identify those offenders who pose a risk of reoffending. *See* former R.C. 2950.02(A)(2) and (B). Laws governing sex offenders were enacted with the lofty aspiration of protecting children. *See generally* Taurean J. Shattuck, Note, *Pushing the Limits: Reining in Ohio's Residency Restrictions for Sex Offenders*, 65 Cleve.St.L.Rev. 591, 594 (2017).

{¶ 34} But overinclusive registration requirements that indiscriminately lump lower-risk offenders in with the highest-risk offenders can paradoxically diminish the ability to protect the public from the highest-risk offenders. If all out-of-state offenders are summarily classified as sexual predators, the pool of registrants may become diluted and those who do pose the highest risk to the public may get lost in the crowd—while those who do not pose the highest risk still face serious adverse collateral consequences. *See generally* Katherine Godin, *The New Scarlet Letter: Are We Taking the Sex Offender Label Too Far?*, 60-Dec. R.I.B.J. 17, 19-20 (2011); Abigail E. Horn, *Wrongful Collateral Consequences*, 87 Geo.Wash.L.Rev. 315, 333-334 (2019). Overpopulation of the sexual-predator registration group may overwhelm the system and force government agencies to make difficult financial choices. *See* Godin at 19. In some cases, excessively stringent registration requirements could actually encourage sex offenders to reoffend because they are left with little to no incentive to rehabilitate. *Id.*

{¶ 35} Against that backdrop, former R.C. 2950.09(F) established that Ohio would not just "rubber stamp" another jurisdiction's lifetime registration requirement without providing some legal mechanism to ascertain whether the adjudication in the foreign state that required lifetime sex-offender registration was substantially similar to the sexual-predator adjudication that would be necessary to

require lifetime registration in Ohio. Today's decision confirms that former R.C. 2950.09(F) served as a necessary check by recognizing that just because a foreign jurisdiction required an offender to register for life did not necessarily mean that the offender would remain classified as a sexual predator with lifetime registration duties in Ohio.

_____

**DEWINE, J., concurring in part and dissenting in part.**

{¶ 36} I agree with the majority that the review contemplated by former R.C. 2950.09(F)(2) does not include an individualized determination of an offender's risk to reoffend. But I think the Tenth District Court of Appeals correctly interpreted the provision. The relevant inquiry is whether the registration requirements of the two jurisdictions are substantially similar.

{¶ 37} Under Megan's Law, Ohio's former sex-offender-registration scheme, an offender who was convicted of a sexually oriented offense in another state and who is required to register until death in that other state is automatically classified as a sexual predator in Ohio. Former R.C. 2950.09(A). Out-of-state offenders may seek to have their sexual-predator classification removed by utilizing the process outlined in former R.C. 2950.09(F)(2). That provision removes the sexual-predator classification if an offender proves "by clear and convincing evidence that the requirement of the other jurisdiction that the offender * * * register as a sex offender until the offender's * * * death is not substantially similar to a classification as a sexual predator" under Ohio law. Former R.C. 2950.09(F)(2), 2006 Am.Sub.S.B. No. 260 ("the Removal Provision").

{¶ 38} By its terms, the provision asks whether two things are substantially similar: (1) the other jurisdiction's requirement of lifetime registration and (2) Ohio's classification as a sexual predator. Although the statute refers to the other state's lifetime registration "requirement" in the singular, the reference to Ohio's sexual-predator "classification" encompasses the registration duties attendant to

that classification. By connecting the other state's lifetime registration requirement to Ohio's sexual-predator classification, the provision's focus on the lifetime registration requirement necessarily includes the duties that are part of that requirement. Applying the Removal Provision in this case, the court must decide whether the obligations imposed on Harmon Lingle and Mark Grosser pursuant to a lifetime registration requirement in Florida are functionally the same as those in Ohio. In other words, do both states impose substantially similar requirements for things like the frequency, place, and manner of registration and reporting?

{¶ 39} Under this plain reading, the other state's determination is essentially carried over into Ohio. An offender who is obligated to register for life in his former state cannot free himself of that requirement simply by moving to Ohio. As long as the other state's registration duties are "substantially similar" to those imposed under Ohio's sexual-predator classification, the lifetime registration requirement follows the offender to Ohio.

{¶ 40} The majority says that it, too, is applying the plain language of the statute. But it reaches a result that has little connection to the statutory language. It says that what the statute really requires is that a court compare the *reason* for lifetime registration in the foreign state to a sexual-predator classification in Ohio. One is at a loss to figure out what this means or where it comes from. It certainly doesn't come from the text. Indeed, a side-by-side comparison shows how far the majority strays from the statutory language:

| What former R.C. 2950.09(F)(2) says: | What the majority says former R.C. 2950.09(F)(2) means: |
|---|---|
| The offender must prove that "the requirement of the other jurisdiction that the offender * * * register as a sex offender until the offender's * * * death is not substantially similar to a classification as a sexual predator." | The trial court should "examine why the out-of-state offender was required to register for life and whether that reason is substantially similar to a classification as a sexual predator in Ohio under former R.C. Chapter 2950." |

18

Majority opinion at ¶ 31.

{¶ 41} The majority's reading of the statute is certainly novel. It has not been advanced by any of the parties. And it is not one that any of the Ohio courts that have looked at this issue has ever thought of.

{¶ 42} It's hard to follow how the majority gets to where it does. It points out that the Removal Provision's reference to "the requirement of the other jurisdiction that the offender * * * register as a sex offender until the offender's * * * death," former R.C. 2950.09(F)(2), is similar to the language authorizing automatic classification as a sexual predator of a person who is "required, under the law of the jurisdiction in which the person was convicted, * * * to register as a sex offender until the person's death," former R.C. 2950.09(A). But that doesn't explain why statutory references to being "required" to register until death mean anything more than just that.

{¶ 43} The majority speculates that the General Assembly chose to use the word "requirement" because it did not know what other states called their classification "assignment[s]." *See* majority opinion at ¶ 26. But, again, that does little to explain why the General Assembly would write the statute in the manner that it did if what it really wanted was some kind of comparison between the Ohio classification and *why* the out-of-state offender was required to register for life.

{¶ 44} One wonders what lower courts will do with the majority's charge. What exactly does a court compare when it looks at the whys of registration? Presumably, someone is required to register for life because a legislature passed a law providing for lifetime registration, the person committed some crime making them eligible for lifetime registration, and there was some process—automatic or otherwise—by which the person was ordered to register. So which of these should a court compare: the law, the crime, the process, or all three? The majority refuses to say.

{¶ 45} Common sense would tell us that the comparison cannot involve the underlying crime. This is because offenders under Megan's Law are, with limited exception, classified as sexual predators based not on their crimes but as a result of an individualized determination by the trial court that they pose a risk to reoffend. *See* former R.C. 2950.09(B)(1) through (3). There would be no relief under a provision requiring a court to compare an out-of-state offense to offenses that qualify for a sexual-predator classification in Ohio because any sexually oriented offense that qualifies for registration can lead to a sexual-predator classification in Ohio. *See* former R.C. 2950.01(E)(1) and (G)(2).

{¶ 46} Another possible take on how a court might "examine why the out-of-state offender was required to register for life," majority opinion at ¶ 31, would be for it to look to the other state's classification process. The majority suggests some processes through which a person might be required to register for life: "The requirement for lifetime registration might spring directly from the conviction for a particular offense, it might result from an adjudicative process following the conviction, it might be the default registration for all sexually oriented offenses, or it might result for another reason." *Id.* at ¶ 25.

{¶ 47} Let's try to compare some of the possible "whys" the majority has provided. Suppose that in one state a person convicted of committing a rape at gunpoint is classified through an adjudicative process but in Ohio that person would be classified automatically as a sexual predator. Could that offender avoid lifetime registration in Ohio simply because Ohio's classification process was different than the other state's? Such a result would seem ridiculous since that person would have been a lifetime registrant if the crime were committed in Ohio. But under the majority's view, if what it characterizes as the reasons for classification are not substantially similar, the offender could have the sexual-predator classification removed.

20

{¶ 48} Or take someone who has been convicted of 15 sex offenses in a state that has decided that any repeat sex offender must register for life. Under Megan's Law, most repeat offenders were entitled to a hearing before being classified as a sexual predator. *See* former R.C. 2950.01(B); former R.C. 2950.09(A). Could that person avoid lifetime registration because his home state made his classification automatic? Under the majority's holding today, it would seem that he could.

{¶ 49} What if another state classifies an offender in a civil process based on a psychological evaluation? Is the fact that a judge does not make the determination a substantial difference in the reason for classification? Or consider a state that permits offenders to petition to have their lifetime registration requirement lifted if after a certain time they have not committed any more sex offenses. Is that a substantial difference from Ohio, since Ohio does not permit its sexual predators to seek to have their classifications removed? Who can say.

{¶ 50} The majority places great emphasis on the fact that the Removal Provision "refers to the law of the other jurisdiction that requires lifetime registration" (emphasis deleted), majority opinion at ¶ 25, but under its view, if the reason why the other state has ordered an offender to register for life is different than Ohio's, all other attributes of that state's laws are of no consequence. The fact that the other state ordered an offender to register for life doesn't matter; all that matters is whether the other state did things the same way we do. If it didn't, then to get out from under the other state's lifetime registration requirement, all the offender need do is relocate to Ohio.

{¶ 51} In the end, the majority leaves courts with no explanation about what it means for a court to compare the reason for lifetime registration in another state to a classification in Ohio. And the majority's lack of guidance is particularly troubling because once a determination is made that a state arrived at the lifetime registration requirement for a reason different than Ohio's (whatever that means),

there is no opportunity to evaluate whether that person should be required to register for life. There is nothing in the statute that would allow an Ohio court to independently evaluate whether lifetime registration is appropriate. There is no ability to evaluate whether an offender poses a risk to reoffend. All we do is indiscriminately wipe out the other state's determination that the offender should be required to register for life without replacing it with our own.

{¶ 52} I see no basis for remanding this case for the trial court to conduct the ill-defined and illogical comparison required by the majority. The Removal Provision simply provides that the other state's order will be carried over into Ohio, unless the offender shows that the obligations imposed by the out-of-state order are not substantially similar to those imposed pursuant to an Ohio sexual-predator classification. I would therefore remand the cause to the trial court for it to conduct that evaluation. Because the majority takes a contrary view, I respectfully dissent from that portion of its judgment.

O'CONNOR, C.J., and FISCHER, J., concur in the foregoing opinion.

_____

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellants.

Dave Yost, Attorney General, Benjamin M. Flowers, State Solicitor, and Michael J. Hendershot, Chief Deputy Solicitor, for appellee state of Ohio.

Barbara E. Wright, in support of neither party for amici curiae, Ohio Rational Sexual Offense Laws and National Association for Rational Sexual Offense Laws.

_____