[Cite as *State v. Steele*, 2025-Ohio-3070.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                            No. 114574

    v.                                    :

DEVION STEELE,                           :

    Defendant-Appellant.         :

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 28, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-687595-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Halie Turigliatti, Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Devion Steele appeals the imposition of a three-year firearm specification arising from his status as an accomplice, even though he never possessed or used a firearm during an aggravated robbery.

{¶ 2} We affirm the trial court's judgment.

**Background and Facts**

{¶ 3} On January 24, 2024, Steele and named codefendant Charlton L. Bronner, Jr. ("Bronner") were indicted on the following counts for events that transpired on or about April 24, 2022, each involving victim A.G.: (1) attempted murder, R.C. 2923.02/2903.02(A); (2) aggravated robbery, R.C. 2911.01(A)(1); (3) aggravated robbery, R.C. 2911.01(A)(3); (4) robbery, R.C. 2911.02(A)(1); (5) robbery, R.C. 2911.02(A)(2); (6) robbery, R.C. 2911.02(A)(3); (7) felonious assault, R.C. 2903.11(A)(1); and (8) felonious assault, R.C. 2903.11(A)(2). Each count carried one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A).

{¶ 4} Steele's bench trial commenced on October 15, 2024. As of the filing of the instant appeal, Bronner has not been arrested.

**Bench Trial**

{¶ 5} Victim A.G. testified that he had sold drugs to Steele several times over the prior two years without an issue. On April 24, 2022, he received a text from Steele requesting to meet at East 125th Street and Superior Avenue in East Cleveland, Ohio, to purchase marijuana. A.G. arrived first and observed Steele arrive in a burgundy Subaru with darkly tinted windows. A.G. could not see how many people were in the car, but it was driven by what appeared to be a female.

{¶ 6} Steele entered A.G.'s front passenger seat to inspect the goods, returned to the Subaru to retrieve funds for the purchase, and reentered A.G.'s front seat, accompanied by Bronner who had exited the right rear seat of the Subaru. A.G.

had never met Bronner and usually did not sell to people he did not know. A.G.

testified as follows as to what transpired:

> A.G.: They started walking up to my car. Comes up to my car. By this
> time, he [Steele] opens my door back up and tries to introduce me to
> this guy telling me he wanted to buy some, and it's his peoples.
>
> . . .
>
> State: Once they both arrived back to your car, where did they get into
> your car?
>
> A.G.: [Steele] gets back in the passenger, and the other guy, he gets in
> the back seat.
>
> State: What happened once they were both in the car?
>
> A.G.: We started — I started just basically talking to the guy in the back
> seat. By this time, [Steele], he is acting as if — he was on his phone by
> this time. Now I am going over the prices of what I want for the
> marijuana with the guy in the back seat now. By his time, I want to say,
> we're going over the prices.
>
> So as we're going over the prices, a little joke went on in the car. I can't
> remember what was said, but them two were giggling for a little second
> about whatever. After the joke had died down a little bit, that's when
> they got in the back seat and pulled the gun on me.

Tr. 28-29.

> {¶ 7}    Bronner pulled out a small black gun.
>
> A.G.: As soon as he pulled it out, he said don't move, give up everything.
> So when he said that, I stopped for a minute. Then I started fidgeting
> going for my gun [kept in the driver's door pocket], but both of them by
> this time were on me. I didn't want to get my head blown off or
> anything. I stopped.

Tr. 30. Steele began searching A.G. and the car. A.G. stated that Steele did not look

surprised when Bronner pulled out the gun and recalled Steele "[j]ust telling me like

don't move." Tr. 31.

{¶ 8} A.G.'s marijuana, a bag of crack cocaine, a personal bag, and a scale were stolen. Bronner instructed Steele to take A.G.'s phone. Bronner then shot A.G. from the back seat, partially paralyzing him, and he and Steele ran to the Subaru and departed. A.G. managed to honk his horn for several minutes, attracting the attention of a male walking by who called 911. A.G. later learned that his gun had been removed from the inside driver's door pocket of his car when police informed him it was found in or behind an abandoned house down the street from the incident.

{¶ 9} A portion of A.G.'s lung was removed due to damage caused by the bullet that traveled from his lung to his arm, where it remains lodged. In addition to partial paralysis, A.G. has had subsequent surgeries due to the spinal-cord injury. A.G. identified Steele in the police photographic lineup and in court. A.G. admitted that he was not initially fully forthcoming with police out of fear of prosecution for his activities but was not dishonest about what transpired in his car with Steele and Bronner.

{¶ 10} Steele admitted his presence in A.G.'s vehicle to police, which was also supported by DNA evidence. Steele denied knowledge or intent regarding the shooting. The only gun located was A.G.'s gun found in or near a neighboring abandoned house. No evidence connected it to the shooting.

{¶ 11} Steele moved for judgment of acquittal under Crim.R. 29, focusing primarily on the attempted murder count. The trial court denied the motion as to all counts.

{¶ 12} The defense presented a single witness, A.C., who had been in a relationship with Steele for about three years. A.C. asked Steele to obtain marijuana and drove Steele to the Superior Road location in her maroon 2012 Subaru. Steele entered victim A.G.'s vehicle, returned to the Subaru to obtain $30 from A.C., stopped to speak with a male she did not know on his way back to A.G.'s car, and entered it along with the male. Steele returned to the Subaru with the marijuana and the two left. A.C. did not see where the other individual went and did not hear any shots. The trial court denied Steele's renewed Crim.R. 29 motion for judgment of acquittal.

{¶ 13} Steele was convicted of Count 2, aggravated robbery and the one- and three-year firearm specifications, and of robbery in Counts 4 and 6. Steele was found not guilty of the one- and three-year gun specifications in robbery Counts 4 and 6, and not guilty of all remaining counts.

{¶ 14} The State elected to proceed with sentencing on Count 2, aggravated robbery, R.C. 2911.01(A)(1), a first-degree felony, with one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A). Steele was sentenced to a three-year "mandatory prison" term on the firearm specification on Count 2 to be served prior to and consecutively to a four-year and maximum six-year term on the base charge.

{¶ 15} As set forth in the sentencing journal entry:

The total stated prison term is minimum of 7 years to a maximum of 9 years at the Lorain Correctional Institution.

The court imposes a mandatory prison term of 3 year(s) on the firearm spec [sic] specification(s) to be served prior to and consecutive to a minimum prison term/aggregate prison term of 4 year(s) and a maximum prison term of 6 year(s) on the underlying offense(s).

The court sentences on each count as follows:

Count(s) 4 and 6 merge into Count 2. State elects to proceed as to Count 2, F[elony] 1: 3 year(s) mandatory prison on the [firearm] . . . specification(s) to be served prior to and consecutive to 4 year(s) and a maximum 6 year(s) on the base charge, 1 year firearm counts merge to just the 3 year firearm specification. Firearm specification is to be served prior and consecutive to the sentence of 4 up to 6 years on the underlying offense.; a mandatory minimum 2 years, up to a maximum of 5 years post release control.[1]

## Assignments of Error

{¶ 16} Steele assigns two errors on appeal:

I.     The trial court erred by imposing a firearm specification on Mr. Steele because the Ohio legislature does not provide for the application of a firearm specification on an accomplice who never possessed or used the firearm.

II.     The trial court erred when it imposed a three-year firearm specification when it should have elected to impose a one-year specification.

## Discussion

## Standard of Review

{¶ 17} "The standard of review for questions of statutory interpretation is de novo." *Wayt v. DHSC, L.L.C.*, 2018-Ohio-4822, ¶ 15, citing *Ceccarelli v. Levin*, 2010-Ohio-5681, ¶ 8. "A court's paramount concern in construing a statute is the

---

[1] The entry states "1 year firearm counts merge to just the 3 year firearm specification." As the trial court explained on the record, though Steele was convicted of both the one- and three-year specifications, the trial court sentenced solely on the three-year specification. Since any error is harmless, a nunc pro tunc entry is not required.

legislative intent in enacting the statute." *State v. S.R.*, 63 Ohio St.3d 590, 594 (1992).

> {¶ 18} When interpreting a statute, a court typically relies on the
>
> "definitions provided by the legislative body" or, when a definition is not given in the statute, the "plain and ordinary meaning" of a term, which we ascertain by looking to the "'particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Lingle v. State*, 164 Ohio St. 3d 340, 2020-Ohio-6788, 172 N.E.3d 977, ¶ 15, quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

*Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2021-Ohio-2798, ¶ 21.

> {¶ 19} Also,
>
> [t]o discern the plain meaning of statutory text, we consult not only lexical sources such as dictionaries, but also the meaning that the words have acquired when they are used in case law. *See Nationwide Mut. Ins. Co. v. Darde*n, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-740, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981) ("'"[w]here Congress uses terms that have accumulated settled meaning under * * * the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms"'" [brackets and ellipsis added in *Community for Creative Non-Violence*]); *see also Wayt v. DHSC, L.L.C.*, 155 Ohio St.3d 401, 2018-Ohio-4822, 122 N.E.3d 92 (because precedent stated that defamation is "an injury to the person," the definition of a "tort action," which includes the phrase "injury or loss to person," encompassed an action for defamation).

*Id.*

**Imposition of Firearm Specification on Unarmed Accomplice**

{¶ 20} Count 2 of the indictment, first-degree aggravated robbery under R.C. 2911.01(A)(1), lists as defendants "Devion Steele, Charlton L Bronner, Jr." and charged that Steele and Bronner

> did, in attempting or committing a theft offense, as defined in [R.C.] 2913.01 . . . or in fleeing immediately after the attempt or offense upon [A.G.] did have a deadly weapon, to wit: firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

{¶ 21} All counts of the indictment carried one-year firearm specifications under R.C. 2941.141(A), providing that Bronner "and/or" Steele "had a firearm on or about his person or under his control while committing the offense," and three-year firearm specifications under R.C. 2941.145(A) charging that Bronner "and/or" Steele "had a firearm on or about his person or under his control when committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense."

{¶ 22} Steele contends that Ohio law does not allow a firearm specification enhancement to be imposed on an accomplice who never possessed or used the weapon involved in the underlying offense. For that reason, Steele requests that this court remove the firearm penalty enhancement and retain the underlying conviction.

{¶ 23} Steele advances that a comparison of the statutory elements of R.C. 2911.01(A)(1) and the three-year firearm specification under R.C. 2941.145(A)

makes it clear that the specification does not apply to an accomplice who never possessed or used a weapon. R.C. 2911.01(A)(1) "[a]ggravated robbery," provides:

> "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) *Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it. . . .*"

(Emphasis in original.) Brief of Appellant, p. 3, quoting *id.*

{¶ 24} R.C. 2941.145(A) entitled "[s]pecification that offender displayed, brandished, indicated possession of or used firearm," states:

> (A) Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about *the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. . . .*

(Emphasis in original.) Brief of Appellant, p. 4, quoting *id.*[2] Steele does not argue that the indictment fails to meet the requirements of R.C. 2941.145(A).

{¶ 25} Steele argues that the emphasized language of the statutes is nearly identical except for the addition of "while committing the offense" in the firearm specification. Consequently, he suggests, "[i]t is illogical for the legislative intent to have been anything other than to have created a sentencing enhancement for the

---

[2] R.C. 2929.14(B)(1)(a)(ii) provides that the court "shall" impose a "term of three years if the specification is of the type described in R.C. 2941.145(A)."

principal offender." Brief of Appellant, p. 4. "It would effectively be a redundancy and superfluous if it were not intended to carve out an additional punishment for [the] actual user of the firearm." *Id.*

{¶ 26} Steele adds that no statute provides for the imposition of the firearm enhancement on an unarmed accomplice including the complicity statute:

> (A) No person, acting with the kind of *culpability required for the commission of an offense*, shall do any of the following:
>
> (1) Solicit or procure another to commit the offense;
>
> (2) Aid or abet another in committing the offense;
>
> (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code. . . .
>
> (F) Whoever violates this section is *guilty of complicity in the commission of an offense*, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

(Emphasis in original.) Brief of Appellant, p. 4-5, quoting R.C. 2923.03.

{¶ 27} As Steele acknowledges, the Ohio Supreme Court has made clear that a firearm specification "as defined in R.C. 2941.145" is a penalty enhancement, not a criminal offense. *State v. Ford*, 2011-Ohio-765, ¶ 19. However, Steele stresses that "*Ford* spoke in terms of if the *defendant* engages in the conduct, not if the *defendant* is complicit in the conduct." (Emphasis in original.) Brief of Appellant, p. 5.

{¶ 28} Thus, Steele encourages this court to determine that "the Ohio legislature did not specifically provide for the application of a firearm specification following a conviction of an offense under an accomplice liability." Brief of Appellant, p. 8.

{¶ 29} The State counters that Ohio law provides just the opposite — that an accomplice can be convicted of a firearm specification despite no control or possession of the weapon where the evidence is sufficient to establish complicity.

> "Ohio case law has recently held that a defendant can be convicted of a crime with a gun specification under R.C. 2929.71, as an accomplice without any evidence of his having had possession or control of the gun. *See State v. Banks* (1985), 16 Ohio St.3d 33 [1985]; and *State v. Moore,* 16 Ohio St.3d 30 [1985]. Therefore, in the case [if the evidence] was sufficient to establish that the appellant was an accomplice, it was also sufficient to convict the appellant of the crime with a gun specification."

Brief of Appellee, p. 4, quoting *State v. Pretzer*, 1985 Ohio App. LEXIS 9397, *17-18 (8th Dist. Nov. 21, 1985).[3]

{¶ 30} A review of Ohio law supports the State's stance. "If complicity is proven, a defendant is subject to a sentencing enhancement on a firearm specification regardless of whether he was the principal offender or an unarmed accomplice." *State v. Capp*, 2016-Ohio-295, ¶ 27 (8th Dist.), citing *State v. Chapman*, 21 Ohio St.3d 41 (1986) (confirming that under the amended firearm enhancement provision of R.C. 2929.71 considered in *State v. Moore*, 16 Ohio St.3d 30 (1985), an unarmed accomplice convicted of armed robbery could be sentenced to a mandatory three-year firearm enhancement term).

{¶ 31} This court recently affirmed the principle that, under Ohio law, there is no distinction between the imposition of a firearm enhancement on an unarmed accomplice versus an armed principal offender. *State v. Wilborn*, 2024-Ohio-5003,

---

[3] R.·C. 2929.71 formerly governed firearm specifications.

¶ 59 (8th Dist.), citing *State v. Crosby*, 2018-Ohio-3793, ¶ 9 (8th Dist.). "The actions of the principal are imputed to the accomplice, and the accomplice may be found to have committed every element of the offense committed by the principal, including possession and use of a weapon." *Id.*, citing *State v. Frost*, 2005-Ohio-5510 (2d Dist.); *see also State v. Alexander*, 2013-Ohio-2533 (8th Dist.).[4]

{¶ 32} Under Ohio's complicity statute, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall aid or abet another in committing the offense." R.C. 2923.03(A).

> The statute does not define "aid or abet," but the Ohio Supreme Court has stated that to aid or abet is "'[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" S*tate v. Johnson*, 2001-Ohio-1336, 93 Ohio St.3d 240, 754 N.E.2d 796, quoting *Black's Law Dictionary* (7th Ed. 1999). "A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Seals*, 2015-Ohio-517, ¶ 34 (8th Dist.), citing *Johnson* at syllabus. Aiding and abetting may be shown by both direct and circumstantial evidence, and "'participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist. 1971).

*Wilborn* at ¶ 43.

---

[4] Steele cites penalty enhancements for aggravated menacing and domestic violence where a prior conviction is subject to a sentencing enhancement as analogies to his position. *See* R.C. 2903.21 and 2919.25, respectively. In those cases, this court agrees that "[t]he principal's legal disability or legal status, however, cannot be imputed on the accomplice in charges involving certain weapons offenses." *Wilburn* at ¶ 59, citing *State v. Adams*, 2010-Ohio-4478 (8th Dist.).

{¶ 33} R.C. 2923.03(F) specifies that "anyone who violates the complicity statute 'shall be prosecuted and punished as if he were a principal offender.'" *Wilborn* at ¶ 45, quoting R.C. 2923.02(F).

> *See State v. Jackson*, 90 Ohio App.3d 702, 705, 630 N.E.2d 414 (6th Dist. 1993) ("The complicity statute treats the accomplice as though he was the one who committed every act of the underlying principal offense."). Prosecution and punishment include any and all sentencing enhancements. *State v. Fulton*, 2011-Ohio-4259, ¶ 42 (8th Dist.), citing *State v. Chapman*, 21 Ohio St.3d 41, 21 Ohio B. 327, 487 N.E.2d 566 (1986), syllabus; *State v. Moore*, 16 Ohio St.3d 30, 33, 16 Ohio B. 410, 476 N.E.2d 355 (1985) (holding that an unarmed accomplice to aggravated robbery is subject to a mandatory three-year term of incarceration on a firearm specification).

*Id.*

{¶ 34} Per Count 2 of the indictment for aggravated robbery under R.C. 2911.01(A)(1):

> Devion Steele, Charlton L Bronner, Jr.
>
> . . .
>
> did, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense upon [A.G.] did have a deadly weapon, to wit: firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.
>
> . . .
>
> Firearm Specification — 3 year — [R.C.] 2941.145(A) . . .
>
> Charlton L Bronner, Jr. and/or Devion Steele had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

Steele and Bronner were charged as a principal and accomplice on each count and on the one- and three-year firearm specifications for those counts.

{¶ 35} The evidence establishes that Steele and Bronner robbed victim A.G. Bronner possessed a firearm during the robbery and shot A.G. The trial court acquitted Steele of all counts except the two robbery counts that merged into the aggravated robbery count and the one-year and three-year firearm specification.

{¶ 36} Steele stated during sentencing that he took full responsibility for his actions and that he participated in the robbery but had nothing to do with the shooting.

> Steele: Well, to be honest, so when I introduced [Bronner] to [A.G.], I introduced him as a brother, as a friend, as someone who I actually could trust and I actually knew. I didn't know one hundred percent these events would occur, but I do accept my role that I played because I was there.
>
> Did I know any of this was going to happen? No, I did not, your Honor. Like I said, I'm not the type of person that just be out there doing anything just to make a dollar. I work hard just like everybody else. Hopefully everybody else does.
>
> Court: So you're saying when [Bronner] sat down in the backseat of that car, you didn't know he was going to shoot —
>
> Steele: One hundred percent no, I did not.
>
> . . .
>
> Steele: . . . I accept full responsibility for my actions.
>
> Court: What does that mean? For what? For your role in this robbery?
>
> Steele: For my role in this robbery, yes, I do.
>
> Court: . . . If the truth is that you played a role in this robbery, you didn't have a gun, Bronner did, you took [A.G.'s] possessions and you

> didn't know Bronner was going to shoot him until he pulled the trigger, that's believable. Is that what happened?
>
> Steele: Yes, your honor.

Tr. 248-249; 254-255.

{¶ 37} Thus, the evidence supports Steele's complicity in this case. As R.C. 2923.03(F) provides: "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." This language unambiguously evidences the legislative intent, as supported by subsequent judicial application, that the complicit individual be equally punished as if he were the principal offender. *Chapman*, 21 Ohio St.3d 41 at 42.

{¶ 38} Based on the record, the evidence is sufficient to find that Steele was complicit in the aggravated robbery in this case. More importantly, Ohio law specifies that Steele is subject to the firearm specification enhancement under R.C. 2923.03(F).

{¶ 39} The first assigned error is overruled.

**Election of One-year or Three-year Firearm Specification**

{¶ 40} While Steele maintains he should not have been subject to a firearm specification, his second assigned error is grounded on this court's recent holding in *State v. Holliman*, 2025-Ohio-1187 (8th Dist.). In *Holliman*, the defendant was convicted of "discharging a firearm on or near prohibited premises and the one- and three-year firearm specifications." *Id*. at ¶ 3. Holliman was sentenced to nine

months on the underlying charge and on the one-year firearm specification instead of the three-year specification. The State appealed, contending the trial court "was bound to sentence Holliman to three years" on the firearm specification. *Id*. at ¶ 4.

{¶ 41} Steele contends the trial court should have elected to impose a one-year specification instead of a three-year specification. This court held in *Holliman* that the "language of the applicable statutes at issue here is plain: if the trial court imposes a three-year firearm specification, then it may not also impose the one-year specification." *Id*. at ¶ 9. "If the trial court imposes the one-year specification, then it may not impose the three-year specification. R.C. 2941.141(B); R.C. 2941.145(B)." *Id*. The legislature "did not state that a trial court must only and always order the three-year specification in a case such as this — if it had intended that, it would have written it into the relevant statutes." *Id*. "The lack of limiting language in a statute permits its broad interpretation." *Id*., citing *State ex rel. McKee v. Cooper*, 40 Ohio St.2d 65, 73-74 (1974).

{¶ 42} Thus, as we established in *Holliman*, R.C. 2941.141 and 2941.145 "do not dictate on which firearm specification an offender in a situation such as here must be sentenced, and we give 'effect to the legislature's intent by simply applying the law as written.'" *Id*., quoting *State v. Faggs*, 2020-Ohio-523, ¶ 15.[5]

---

[5] On August 5, 2025, the Ohio Supreme Court accepted *Holliman* for review of the following proposition: "When an offender is convicted of firearm specifications pursuant to R.C. 2941.141 and R.C. 2941.145 for the same offense, and R.C. 2929.14(B)(1)(g) is inapplicable, the specifications merge and the State may choose which specification to pursue at sentencing." *State v. Holliman*, 2025-Ohio-1187 (8th Dist.), *appeal accepted*, 2025-Ohio-2749.

{¶ 43} R.C. 2941.145 "governs three-year firearm specifications, which is appropriate when an offender brandishes, displays, indicates possession of, or uses a firearm while committing an offense." *Holliman* at ¶ 5. In the instant case, the trial court stated on the record and in its sentencing entry that Steele was sentenced to a "mandatory" three-year term under R.C. 2941.145.

> Court: So I've already indicated the reasons for my sentence and how I arrived at it consistent with [R.C.] 2929.19(B)(2).
>
> The defendant in count two will be sentenced to the three-year firearm specification which will need to be served prior to and consecutive with a four-year sentence [subject to Reagan Tokes] on the underlying felony, aggravated robbery, for a total of seven years.
>
> Let me indicate, Mr. Steele, that the three-year firearm specification is entirely mandatory but that you may be eligible for judicial release after six months of the underlying felony time. . . .

Tr. 262.

{¶ 44} The trial court's decision to sentence on the three-year specification was wholly within its discretion. The second assignment of error lacks merit and is overruled.

**Conclusion**

{¶ 45} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHAEL JOHN RYAN, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR